OHIO DEPARTMENT OF ADMINISTRATIVE
SERVICES, Appellee and Cross–Appellant,

v.

ROBERT P. MADISON INTERNATIONAL, INC. et al.; Fidelity & Deposit
Company of Maryland, Appellant; United States Mineral Products
Company, d.b.a. Isolatek Internatl., Appellee.

[Cite as *Ohio Dept. of Adm. Serv. v. Robert P. Madison
Internatl., Inc.* (2000), 138 Ohio App.3d 388.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 99AP–769, 99AP–773.

Decided May 30, 2000.

*Betty D. Montgomery,* Attorney General, and *Michael R. Gladman,* Assistant Attorney General, for Ohio Department of Administrative Services.

*McNamara & McNamara* and *William H. Woods,* for appellant Fidelity & Deposit Company of Maryland.

*Ulmer & Berne, L.L.P.,* and *Thomas L. Rosenberg,* for appellee United States Mineral Products Co.

---

TYACK, Judge.

On October 31, 1995, the Ohio Department of Administrative Services ("ODAS") filed a complaint in the Franklin County Court of Common Pleas against Robert P. Madison International, Inc., Miles–McClellan Construction Company, and Forest City Erectors. ODAS set forth claims of breach of contract and negligence arising from the design and construction of a main computer facility that would house most of the state's mainframe computers. ODAS averred, in part, that subsequent to the completion of the project, the roofing system suffered a number of failures and that the fireproofing insulation became detached from the metal roof decking and structural steel beams.

On July 16, 1996, ODAS filed a motion for leave to file an amended complaint for the purpose of adding three parties. The trial court granted ODAS's motion. The first amended complaint added Turner Construction Company, Omni Fireproofing Co., Inc. ("Omni"), and Fidelity & Deposit Company of Maryland ("F & D"). The first amended complaint averred that on June 24, 1990, ODAS entered into a contract with Omni for the installation of spray-on fire protection and that the fire protection failed as a result of a defective product and Omni's improper installation thereof. F & D provided a bond to Omni pursuant to R.C. 153.54. The bond obligated F & D to indemnify ODAS, up to the limits of Omni's contract with ODAS, for all damages suffered by the state as a result of Omni's failure to perform under the contract. ODAS averred that as a result of Omni's liability to ODAS, F & D was liable to ODAS for the full amount of the bond.

On December 10, 1996, F & D filed a motion to dismiss and, in the alternative, a motion for summary judgment. The trial court denied F & D's motion on February 7, 1997.

On January 23, 1997, ODAS filed a second amended complaint, adding as a defendant United States Mineral Products Company, d.b.a. Isolatek International ("Isolatek"). ODAS set forth claims of negligence and products liability. Specifically, ODAS averred Isolatek manufactured fireproof insulation and supplied Omni with the spray-on fire resistant materials used on the construction project at issue. ODAS alleged, in part, that the failure of the fireproof materials was

the result of a defective product. ODAS averred that the fireproof material was unfit for its reasonably foreseeable use, Isolatek should have known the product was unfit, Isolatek failed to use any warning or instruction that the product was not fit for its reasonably foreseeable use, and the product failed to conform to the warranties and representations of Isolatek. F & D filed an answer to the second amended complaint and a cross-claim against Omni.

On May 12, 1997, F & D filed a motion to dismiss and a motion for sanctions against ODAS pursuant to R.C. 2323.51. ODAS filed a memorandum contra, and F & D filed a reply. On June 5, 1997, the trial court filed a decision and entry denying F & D's motion to dismiss and motion for sanctions.

On September 5, 1997, Isolatek filed a motion for summary judgment. On December 5, 1997, F & D filed a motion for summary judgment. On April 22, 1998, the trial court filed a decision and entry, granting Isolatek's motion for summary judgment.

On March 9, 1999, F & D filed a motion to dismiss ODAS's claims for failure to prosecute. On June 3, 1999, an agreed entry was filed, indicating that a settlement agreement had been entered into between ODAS and Omni and that ODAS had also agreed to dismiss its claims against F & D. Hence, all claims against Omni and F & D were dismissed with prejudice. The agreed entry stated that there was no just cause for delay, and that it was a final, appealable order as to ODAS's claims against all defendants.[1]

ODAS has appealed from the trial court's grant of summary judgment in favor of Isolatek, assigning the following errors for our consideration:

"I. The trial court erred when it held that, based on the economic loss doctrine, the ultimate user of a defective product who was not in privity of contract with the manufacturer of the defective product could not recover its damages from the manufacturer under common law tort theories.

"II. The trial court erred when it concluded that the state of Ohio was a commercial buyer and therefore unable to recover its damages caused by the manufacturer of a defective product."

F & D has also appealed, assigning the following as errors:

"(1) The common pleas court erred in overruling F & D's December 10, 1996 *Motion to Dismiss* the *First Amended Complaint* after being advised (1) ODAS obtained leave of court to join F & D as a new-party defendant through misrepresentation of material facts; (2) ODAS was attempting to drop necessary parties Forest City, Miles–McClellan and South Texas without leave of court in

---

1. By this time, ODAS's claims against the various defendants had been settled and/or dismissed.

violation of Civil Rule 21; and (3) ODAS could not present probative evidence supporting a valid claim against new-party defendants Omni and F & D.

"(2) The common pleas court erred in overruling F & D's December 10, 1996 *Alternative Motion for Stay of Discovery Pending a Ruling on a Motion for Summary Judgment* after being advised (1) ODAS obtained leave of court to join F & D as a new-party defendant though misrepresentation of material facts; (2) ODAS was attempting to drop necessary parties Forest City, Miles–McClellan and South Texas without leave of court in violation of Civil Rule 21; and (3) ODAS could not present probative evidence supporting a valid claim against new-party defendants Omni and F & D.

"(3) The common pleas court erred by tacitly permitting, over F & D's objections, plaintiff ODAS to drop Forest City, Miles–McClellan and South Texas as necessary parties to ODAS's January 1997 *Second Amended Complaint* without obtaining leave of court in violation of Civil Rule 21.

"(4) The common pleas court erred by overruling F & D's May 12, 1997 *Motion to Dismiss* for failure to join six necessary party defendants, including two additional contractors and four surety companies.

"(5) The common pleas court erred by overruling F & D's May 12, 1997 *Alternative Motion for Sanctions* pursuant to R.C. 2323.51 without holding an evidentiary hearing on F & D's claim as required by R.C. 2323.51(B) or stating a reason for not holding such a hearing.

"(6) The common pleas court erred by failing to rule on F & D's meritorious December 5, 1997 *Motion for Summary Judgment* within 120 days as required by Ohio Superintendence Rule 40(A).

"(7) The common pleas court erred by failing to rule on F & D's meritorious December 5, 1997 *Motion for Summary Judgment* and Omni's meritorious March 26, 1998 *Motion for Summary Judgment* before continuing the jury trial specially set to begin in May, 1998.

"(8) The common pleas court erred by failing to rule on F & D's meritorious December 5, 1997 *Motion for Summary Judgment* and Omni's meritorious March 26, 1998 *Motion for Summary Judgment* before continuing the jury trial scheduled to begin in October 1998 and tacitly continuing the jury trial scheduled to begin on January 4, 1999 after ODAS failed to appear for trial.

"(9) The common pleas court erred by failing to rule on F & D's March 9, 1999 *Request for an Order* dismissing plaintiff's *Second Amended Complaint for Failure to Prosecute* as stated in the court's February 12, 1999 *Notice* and F & D's *Alternative Requests* for a *Decision* on its meritorious December 5, 1997 *Motion for Summary Judgment or a Prompt Jury Trial Date.*

"(10) The trial court's repeated abuse of discretion, coupled with ODAS' 'frivolous conduct' in violation of R.C. 2323.51, denied F & D due process of law as guaranteed by Article I, Section 16 of the Ohio Constitution." (Emphasis *sic.*)

The appeals have been consolidated for our review. We note first that on July 19, 1999, ODAS filed a motion to dismiss with this court, contending F & D's appeal should be dismissed as no case remained pending against F & D since all the claims against it had been dismissed. On January 18, 2000, this court issued a memorandum decision denying ODAS's motion to dismiss.

We address ODAS's assignments of error first. ODAS's assignments of error are interrelated and, therefore, will be addressed together. The trial court granted summary judgment in favor of Isolatek on ODAS's claims for negligence, breach of implied warranty, and strict liability, stating that under the law of negligence, a manufacturer has no duty to protect consumers' economic expectations, but only physical injuries, and a common-law tort action for purely economic loss stemming from a defective product based on implied warranty/strict liability is not available to ODAS, a commercial buyer. ODAS contends the trial court erred in concluding it could not maintain its tort claims against Isolatek. ODAS also asserts that the determination of whether it was a commercial buyer is a question of fact. Isolatek asserts that ODAS was a commercial buyer and that commercial buyers cannot maintain tort claims of breach of implied warranty/strict liability for purely economic loss.

█ Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is *de novo.* See *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. The issues before this court involve essentially a question of law—whether ODAS can maintain common-law tort actions for negligence and breach of implied warranty/strict liability against Isolatek, the manufacturer of an alleged defective product, for purely economic loss where no privity of contract exists.

We address ODAS's negligence claim first and find the trial court correctly granted summary judgment in favor of Isolatek on this claim. In *Inglis v. Am. Motors Corp.* (1965), 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, paragraph one of the syllabus, the Supreme Court of Ohio held:

"In an action involving product liability based on negligence against the manufacturer of the product by a buyer of the product not in privity of contract with the manufacturer, there is no liability for pecuniary loss of bargain."

■ There is no dispute that ODAS was not in privity of contract with Isolatek and that ODAS brought its negligence claim against Isolatek for purely economic loss. Therefore, as a matter of law, the trial court did not err in concluding that ODAS could not maintain a negligence claim against appellee Isolatek.

■ However, ODAS also set forth claims for breach of implied warranty and strict liability. We note that there is no distinction between implied warranty in tort and strict liability in tort. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 46, 537 N.E.2d 624, 631–632. In *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 71 O.O.2d 66, 326 N.E.2d 267, syllabus, the Supreme Court of Ohio held:

"An action in tort, based on the properly pleaded theory of breach of implied warranty, may be maintained to recover for damage to property."

In *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 67, 661 N.E.2d 714, 716, the Supreme Court re-affirmed its holding in *Iacono,* stating that despite the lack of privity between the plaintiff and the supplier of concrete, the *Iacono* court had allowed a plaintiff to recover against the supplier based on breach of implied warranty.

Isolatek contends that the holdings in *Iacono* and *LaPuma* apply only to noncommercial buyers of defective products. Isolatek points out that the plaintiffs in *Iacono* and *LaPuma* were homeowners and not commercial buyers. However, the syllabus in *Iacono* does not limit the holding to noncommercial buyers. Rather, it simply states that an action for breach of implied warranty may be maintained for property damage.

We note that in *Chemtrol, supra,* at paragraph two of the syllabus, the Supreme Court of Ohio held:

"A commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain *a contract action* for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence." (Emphasis added.)

■ However, the holding above clearly applies only to contract actions. Here, we have no privity of contract between ODAS and Isolatek, and the holding in *Iacono* applies. Indeed, the *Chemtrol* court stated that, taken together, *Inglis* and *Iacono* hold that "an action in tort for breach of express or implied warranty

or an action in strict liability may be maintained for purely economic loss [and that] notably absent from these cases is the element of privity of contract * * *." *Chemtrol,* 42 Ohio St.3d at 49, 537 N.E.2d at 634. The issue in *Chemtrol* was whether economic loss could be recovered in strict liability where the parties *were* in privity of contract. *Id.* The Supreme Court went on to state that the doctrine of implied warranty is designed to protect "consumers" not covered by contractual sales warranties because of lack of privity; therefore, where privity of contract exists, the theory of implied warranty is unnecessary. *Id.* The Supreme Court specifically indicated that the situation presented in the case at bar, a situation involving an absence of privity of contract, was not considered in *Chemtrol. Id.,* 42 Ohio St.3d at 50, 537 N.E.2d at 635, fn. 7. Hence, *Chemtrol* does not support Isolatek's contention that recovery for economic loss on theories of implied warranty/strict liability is limited to noncommercial buyers.

Isolatek cites *Midwest Ford, Inc. v. C.T. Taylor Co.* (1997), 118 Ohio App.3d 798, 801, 694 N.E.2d 114, 116–117, wherein the Medina County Court of Appeals held that a common-law action in tort for purely economic loss, based on implied warranty theory, was not available to commercial buyers. The court of appeals based its decision on a New Jersey case, *Spring Motors Distributors v. Ford Motor Co.* (1985), 98 N.J. 555, 489 A.2d 660, wherein the New Jersey Supreme Court held that "a commercial truck buyer seeking economic damages for defective products was limited to his remedies under the Uniform Commercial Code [and could not maintain a tort action] in strict liability to compensate purely economic loss." *Midwest Ford,* 118 Ohio App.3d at 803, 694 N.E.2d at 118.

 However, this court sees no basis for distinguishing between so-called commercial and noncommercial buyers. As indicated above, *Iacono's* holding did not limit its application to noncommercial buyers. As the *Chemtrol* court stated, the doctrine of implied warranty is designed to protect "consumers" who are not in privity of contract. Clearly, ODAS is a consumer and should be afforded such protection. In addition, this court has impliedly indicated that commercial buyers can maintain a strict liability/breach of implied warranty claim against a remote manufacturer, not in privity, for economic loss.

In *Columbus City School Dist. Bd. of Edn. v. Fry, Inc.* (1984), 22 Ohio App.3d 94, 22 OBR 281, 489 N.E.2d 294, the board of education brought suit against a contractor for damages stemming from alleged defective roofs and against an insurance company that furnished the performance bond. The contractor filed a third-party complaint for indemnification against the manufacturer of the material used by the subcontractor to install one of the roofs. *Id.,* 22 Ohio App.3d at 95–96, 22 OBR at 283–284, 489 N.E.2d at 296–297. In other words, the contractor alleged that if it was liable to the board of education for defective

materials, then it had a claim for indemnification against the manufacturer of the materials.

■ This court stated that it found the principle of *Iacono* applicable not only to a claim of the ultimate user of the material, but also to the indemnification claim of a contractor found liable to the ultimate user. *Id.*, 22 Ohio App.3d at 97, 22 OBR at 284–285, 489 N.E.2d at 297–298. This court's holding in *Fry* is relevant to our holding herein because the claim in *Fry* was for indemnification, and indemnification is the " 'right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement.' " *Id.*, 22 Ohio App.3d at 97, 22 OBR at 285, 489 N.E.2d at 298, quoting *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus. In other words, one has an indemnification claim only if the other person was liable to so pay under the law.

Had this court followed Isolatek's position in deciding *Fry*, the contractor would not have prevailed because the board of education would have been considered a "commercial buyer," and the manufacturer would not have been liable to the commercial buyer. It would follow then that the contractor could not seek indemnification from the manufacturer since the manufacturer would not be liable to the commercial buyer. However, this court found that the contractor could maintain an indemnification claim against the manufacturer. Hence, this court impliedly held that a commercial buyer could recover against a remote manufacturer.

Based on all of the above, we find the trial court erred in granting summary judgment in favor of Isolatek on ODAS's claim for breach of implied warranty/strict liability, as such a claim may be maintained by ODAS. However, as indicated above, the trial court correctly granted summary judgment in favor of Isolatek on ODAS's negligence claim. Accordingly, ODAS's first assignment of error is sustained in part and overruled in part. Because this court finds that a consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss, ODAS's second assignment of error is moot.

■ We now turn to F & D's appeal. F & D's first, second, third, fourth, sixth, seventh, eighth, and ninth assignments of error each address various rulings by the trial court in the underlying action. However, this court may not address these matters as all the claims against F & D were dismissed with prejudice on June 3, 1999. Hence, F & D is no longer a party in the underlying matter. Indeed, as to the merits of the underlying case, there is no case pending against F & D. Hence, this court has no basis for ruling on the matters assigned as error. Accordingly, F & D's appeal, insofar as its first, second, third, fourth,

sixth, seventh, eighth, and ninth assignments of error are concerned, must be dismissed.

However, F & D's fifth and tenth assignments of error, in essence, address the trial court's denial of its May 12, 1997 motion for sanctions pursuant to R.C. 2323.51. We note that we reaffirm our decision on ODAS's motion to dismiss filed with this court. ODAS argued that F & D's appeal should be dismissed since no case remained pending against F & D once it had been voluntarily dismissed. However, this court denied ODAS's motion on January 18, 2000, recognizing that F & D's appeal of the trial court's denial of its motion for sanctions survived the dismissal of the underlying action. Indeed, this court has held that a trial court retains jurisdiction to entertain a motion to impose sanctions under R.C. 2323.51 despite a plaintiff's voluntary dismissal of the action. *Grossman v. Mathless & Mathless, C.P.A.* (1993), 85 Ohio App.3d 525, 528, 620 N.E.2d 160, 162. Hence, this court may address F & D's appeal and assignments of error relating to the trial court's denial of its motion for sanctions.

In its motion for sanctions, F & D asserted that ODAS had continuously engaged in frivolous conduct and requested the trial court to set a date for an evidentiary hearing on the matter. On June 5, 1997, the trial court filed a decision denying F & D's motion. F & D contends on appeal that the trial court erred in failing to hold an evidentiary hearing on its motion and in failing to give its reasons for denying the motion for sanctions.

R.C. 2323.51 addresses frivolous conduct and sanctions, and states:

"(B)(1) * * * [A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. * * *

"(2) An award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action * * * but only after the court does all of the following:

"(a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;

"(b) Gives notice of the date of the hearing * * * to each party or counsel of record who allegedly engaged in frivolous conduct and to each party who allegedly was adversely affected by frivolous conduct;

"(c) Conducts the hearing * * *, allows the parties and counsel of record involved to present any relevant evidence at the hearing, * * * determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made. * * *"

 Contrary to F & D's contention, R.C. 2323.51 does not require a trial court to conduct a hearing prior to denying a motion for attorney fees. *Tosi v. Jones* (1996), 115 Ohio App.3d 396, 401, 685 N.E.2d 580, 583. Rather, a trial court "must schedule a hearing only on those motions which demonstrate arguable merit. * * * Where a trial court determines that there is no basis for the imposition of sanctions, it may deny the motion without a hearing." *Id.* at 401, 685 N.E.2d at 584. Here, the trial court did not schedule a hearing. It simply stated that it had reviewed the parties' motions and memoranda and the arguments raised at a status conference, and, thereafter, denied the motion. While it is preferable that the trial court give more specific reasons for denying the motion, the failure of the trial court to so explain is not grounds for reversal. Further, a trial court's decision to deny a hearing on a motion for sanctions will not be reversed absent an abuse of discretion. *Reyes v. McCabe* (Mar. 31, 1997), Franklin App. No. 96APE05–690, unreported, 1997 WL 142365, at *11. We find no such abuse of discretion here.

R.C. 2323.51(A) defines "conduct" and "frivolous conduct" as follows:

"(1) 'Conduct' means any of the following:

"(a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, or the taking of any other action in connection with a civil action;

"* * *

"(2) 'Frivolous conduct' means either of the following:

"(a) Conduct of * * * [a] party to a civil action * * * or of the * * * party's counsel of record that satisfies either of the following:

"(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal * * *.

"(ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

This court has reviewed the record and concludes that the trial court did not err in denying F & D's motion for sanctions. ODAS's suit and subsequent filings against F & D did not constitute conduct that served merely to harass or maliciously injure any other party nor was it unwarranted under the law. Further, as ODAS points out, its claim against F & D survived motions to dismiss and for summary judgment.

Given this record, the trial court did not err in denying the motion for sanctions. Accordingly, F & D's fifth and tenth assignments of error are overruled.

In summary, ODAS's first assignment of error is sustained in part and overruled in part, and its second assignment of error is moot. F & D's appeal, as it pertains to its first, second, third, fourth, sixth, seventh, eighth, and ninth assignments of error, is dismissed. F & D's fifth and tenth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to the trial court to conduct further appropriate proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DESHLER and McCORMAC, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, sitting by assignment.