[Cite as *Giusti v. Felten*, 2014-Ohio-3115.]

STATE OF OHIO )               IN THE COURT OF APPEALS
                )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

GEORGE GIUSTI

      Appellant/Cross Appellee

      v.

SCOTT FELTEN, M.D., et al.

      Appellees/Cross Appellants

C.A. Nos.     26611
               26695


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2010 04 2909

DECISION AND JOURNAL ENTRY

Dated: July 16, 2014

MOORE, Presiding Judge.

{¶1} Plaintiff-Appellant/Cross-Appellee, George Giusti, individually and as Administrator of the Estate of Jason Rinehart, appeals from the August 2, 2012 judgment entry of the Summit County Court of Common Pleas. Further, Defendants-Appellees/Cross-Appellants, Scott Felten, M.D., Christ Kyriakedes, D.O., and General Emergency Specialists, Inc. ("Appellees") cross-appeal from the October 1, 2012 judgment entry of the Summit County Court of Common Pleas. We affirm both judgments.

I.

{¶2} On March 8, 2005, Jason Rinehart was admitted to Akron General Medical Center's emergency department with severe back pain, vomiting, nausea, abdominal pain, and some numbness in his right hand and left foot. While in the emergency room, Mr. Rinehart was treated by Dr. William Kurtz and Drs. Felten and Kyriakedes. Because Mr. Rinehart had a history of kidney stones, an abdominal and pelvic CT scan was performed, as well as a

urinalysis. Upon learning that the results of the CT scan were negative, Mr. Rinehart was discharged and sent home. He died the next day from a ruptured aortic dissection.

{¶3} In 2010, George Giusti, individually and as Administrator of the Estate of Jason Rinehart, refiled a wrongful death action alleging negligence against Appellees. After several years of litigation, the matter proceeded to jury trial. During voir dire, Mr. Giusti challenged, for cause, jurors number 1, 2, 4, and 6. The trial court denied these challenges for cause, and Mr. Giusti then used his three peremptory challenges to remove jurors number 1, 2, and 4 from the venire.

{¶4} Following trial, the jury rendered a unanimous verdict in favor of Appellees. Mr. Giusti timely appealed, raising one assignment of error for our review. Additionally, Appellees filed a cross-appeal, raising three assignments of error for our review.

II.

**Appeal**

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION IN OVERRULING FOUR MOTIONS TO EXCUSE JURORS FOR CAUSE WHICH RESULTED IN A VERDICT THAT WAS NOT FREE FROM BIAS AND PREJUDICE[] AS THE JURORS CLEARLY INDICATED FACTS THAT DEMONSTRATED A PROPENSITY AND DANGER OF BIAS AND PREJUDICE[.]

{¶5} In his sole assignment of error, Mr. Giusti argues that the trial court erred in overruling his motions to excuse jurors number 1, 2, 4, and 6 for cause because they demonstrated a propensity of bias and prejudice in favor of Appellees.

{¶6} "A trial court has broad discretion in determining a prospective juror's ability to be impartial." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 94, citing *State v. White*, 82 Ohio St.3d 16, 20 (1998). "Former R.C. 2313.42(J) (now R.C. 2313.17(B)(9)) stated that

good cause exists for the removal of a prospective juror when 'he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.'" *Id.* "'A prospective juror who has been challenged for cause should be excused if the court has any doubt as to the juror's being entirely unbiased.'" *Id.*, quoting former R.C. 2313.43 (now R.C. 2313.17(D)); *see State v. Cornwell,* 86 Ohio St.3d 560, 563 (1999). As such, "[a] trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion." *Maxwell* at ¶ 94. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Further, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *See Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶7} "In cases where a juror gives conflicting answers regarding a possible bias, the trial court must determine which answer truly reflects the prospective juror's state of mind." *Gurley v. Nemer*, 9th Dist. Summit No. 21965, 2004-Ohio-5169, ¶ 6, citing *State v. Jones*, 91 Ohio St.3d 335, 339 (1991). "As long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Gurley* at ¶ 6, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶8} In the present matter, Mr. Giusti challenges the impartiality of jurors number 1, 2, 4, and 6. Specifically, he argues that: (1) juror number 1 should have been excused for cause because he indicated that he had similar medical issues to those in this case, and that "he did not see how anyone could put that knowledge aside," (2) juror number 2 should have been excused for cause because he indicated that he would be distracted by work and that he was predisposed

to believing that 99.9% of doctors do the right thing, (3) juror number 4 should have been excused for cause because she had a strong bias in favor of doctors, and (4) juror number 6 should have been excused for cause because she "has worked in the same institution for 38 years as the Defendant Doctors and cannot be considered free from bias and prejudice."

{¶9} In response, Appellees assert that Mr. Giusti has mischaracterized the jurors' statements, and that "Mr. Giusti cannot cite to any portion of [the jurors'] respective voir dire examinations in which the [t]rial [c]ourt would have any doubt about their commitment to being fair and impartial jurors."

Juror No. 1

{¶10} Juror No. 1 stated that he had undergone heart surgery and was diagnosed with connective tissue disease. Appellees' attorney questioned him about the effect his medical conditions may have upon his ability to be impartial at trial as follows:

MS. DELGROS: That is an important fact, one of the facts that we're going to be talking a lot about, and its role in Mr. Rinehart's death. Your personal experience with bicuspid valve and connective tissue disease, is that going to affect your ability to be fair and impartial?

[JUROR NO. 1]: *No.*

MS. DELGROS: The decision of this jury has to be based on evidence that is presented in this courtroom and only this courtroom. You have personal experience with these disease processes. Can you set aside the knowledge that you gained about those disease processes and listen to and base your decision on the evidence here?

[JUROR NO. 1]: I can set aside—I can listen to the facts. Can I set aside my own personal knowledge of what I know?

MS. DELGROS: That is an almost impossible thing.

[JUROR NO. 1]: I don't think anybody can.

MS. DELGROS: Can you base your decision on the evidence and not your own personal knowledge?

[JUROR NO.1]: *Yes.*

(Emphasis added.)

{¶11} Upon review of the totality of Juror No. 1's testimony, we conclude that the trial court did not abuse its discretion by refusing to remove him for cause from the jury. Juror No. 1 unequivocally indicated that he could be a fair and impartial juror regardless of his personal medical conditions. Juror No. 1 also stated that he could listen to the evidence presented in this case, and make a decision based upon it, instead of his personal knowledge.

Juror No. 2

{¶12} Juror No. 2 stated that he is a senior vice-president of construction for a real estate developer in Cleveland, Ohio, that he travels extensively, and receives 100 emails per day. When questioned by Mr. Giusti's attorney whether he is willing to be a juror, and if he thinks he can do it without being distracted from the case, Juror No. 2 answered "[d]istractions aside, it is part of being a citizen. If I have to do it, I have to do it." Further, when asked if he believed that "doctors need to live up to a certain standard of care and whether [he] favor[s] one side or the other," Juror No. 2 testified, "I think they *do have to* live up to a professional standard of care. In my opinion, 99.9 percent they're not in there to make hasty decisions." (Emphasis added.) Juror No. 2 was also asked if he "realize[s] that sometimes [doctors] make decisions that aren't right," and he replied "[e]verybody is human[.]"

{¶13} Upon review of the totality of Juror No. 2's testimony, we conclude that the trial court did not abuse its discretion by refusing to remove him for cause from the jury. Juror No. 2 never indicated that he would be too busy or distracted by work to perform his duties as a juror. Additionally, while he stated a generally positive opinion of doctors, he added that doctors are

human, and that they have to live up to a standard of care, which clearly supports Mr. Giusti's position in this matter.

Juror No. 4

{¶14} Juror No. 4 stated that she had recently returned from living in Thailand and Shanghai for fifteen years. She expressed that, in Asia, people have high esteem for doctors and it is almost unheard of to file a lawsuit. She also stated that her son-in-law is an ophthalmologist and is worried about lawsuits. However, she agreed that everybody is human and makes mistakes. Additionally, when asked if she favors doctors, Juror No. 4 answered "[n]o, because I think we have—we shouldn't just take the doctors' * * * we don't just take their word for it." Juror No. 4 did not describe any other experiences that would sway her opinion one way or the other in this case.

{¶15} Upon review of the totality of Juror No. 4's testimony, we conclude that the trial court did not abuse its discretion by refusing to remove her for cause from the jury. Although Juror No. 4 may hold doctors in high esteem, she also acknowledged that they are human, and that she would question them in certain situations. Further, Juror No. 4 indicated that she did not favor doctors.

Juror No. 6

{¶16} Juror No. 6 stated that she is employed with the Akron General Internal Medicine Center of Akron, which is a resident teaching practice. Further, Juror No. 6 stated that she does not "have a lot of dealings with the emergency room," does not know either of the defendant doctors, and works in a separate building from the emergency room. Mr. Giusti's counsel elicited the following testimony regarding whether Juror No. 6's job would cause her to be biased or partial toward Appellees:

MR. WHITAKER:  * * * Do you feel there is anything about your work that might make you not want to find against—regardless of the facts, that you might favor doctors a little more?

[JUROR NO. 6]: *I would like to think not.  I'm a pretty logical person.*

MR. WHITAKER:  Knowing that you have to go back after this trial to Akron General, and know that one of the doctors may be also going back to Akron General, would that cause you any concern?

[JUROR NO. 6]:  No.

MR. WHITAKER:  Would you be worried about what some of your other workers would feel about you having ruled in favor of a Plaintiff?

[JUROR NO. 6]: *No*.

* * *

MR. WHITAKER:  What exactly do you do in your job?

[JUROR NO. 6]:  I'm a discharge clerk.  When the patients leave the office, we take care of the follow-up appointments, schedule tests, do all of that.

MR. WHITAKER:  There will be some testimony or at least some discussion about a nurse involved in the discharge process.  Can you separate your responsibilities and your duties in evaluating that discharge process?

[JUROR NO. 6]:  Well, I think everybody, every department at Akron General, their discharge process is totally different from each other.  I would almost guarantee that [the] ER discharge nurse process is nothing like ours.

MR. WHITAKER:  I take it that is a yes?

[JUROR NO. 6]: *That is a yes.*  They're totally different, totally separate.

MR. WHITAKER:  Would you feel comfortable if you were sitting—bringing this lawsuit and it was a medical negligence case involving doctors from Akron General, would you feel comfortable having jurors that feel the way you do?

[JUROR NO. 6]:  I don't know.  I can't answer that.

MR. WHITAKER:  That's a tough question.  It is really, simply, do you think that given everything about your background you have a tendency to favor the doctors above the damages and above the claim that Mr. Giusti is bringing on behalf of [Mr. Rinehart]?

[JUROR NO. 6]:  I'd like to think not, but again, I'm only human too.

MR. WHITAKER:  * * * Can you—can you do it, or can't you do it?  If you think that you can't, then we need to know.  If you feel you can—

[JUROR NO. 6]:  *I think I can.*  * * *

(Emphasis added.)  Appellees' counsel then further questioned Juror No. 6 about her job with the clinic as follows:

MS. DELGROS:   In this case, Jason Rinehart was referred to the internal medicine clinic when he was discharged from Akron General.  How long have you worked at the clinic?

[JUROR NO. 6]:  About 15 years.

MS. DELGROS:  That would have encompassed the time period in 2005?

[JUROR NO. 6]:  Yes.

MS. DELGROS:  The name Jason Rinehart doesn't sound familiar to you?

[JUROR NO. 6]:  No.

MS. DELGROS:  Does the fact that this patient was referred to you, where you worked, have impact on you whatsoever in your ability to be fair?

[JUROR NO. 6]:  *No.*  Most patients that go to the emergency room that do not have a primary care physician, they are sent to us.

MS. DELGROS:   Do you handle the patient's scheduling appointments and follow[]up?

[JUROR NO. 6]:  Correct, correct.

* * *

{¶17}    Upon review of Juror No. 6's testimony, we conclude that the trial court did not abuse its discretion by refusing to remove her for cause from the jury.  Although Juror No. 6 works for a clinic affiliated with Akron General, she disclosed several important facts:  (1) she does not know either of the defendant doctors, (2) she works in a separate building, (3) she did not know Mr. Rinehart, (4) she is a logical person and can separate her work from the facts of this case, (5) she works in an administrative role as a discharge clerk, and (6) the fact that Mr.

Rinehart was referred to the internal medicine clinic, after being discharged from the ER, would not affect her ability to be fair.

{¶18}  As previously stated, if the trial court is satisfied that a juror can be fair, impartial, and follow the law as instructed, it need not remove that juror for cause.  *See Gurley*, 2014-Ohio-5169, at ¶ 6, citing *Berk*, 53 Ohio St. at 169.  Therefore, because the testimony of Jurors number 1, 2, 4, and 6 did not indicate that they could not be fair and impartial jurors, or that they would not follow the law as given to them by the trial court, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in overruling Mr. Giusti's challenges for cause.

{¶19}  Accordingly, Mr. Giusti's sole assignment of error is overruled.

**Cross-Appeal**

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [CROSS-APPELLANTS'] MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS[.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED IT DISCRETION IN DENYING [CROSS-APPELLANTS'] MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS WITHOUT CONDUCTING A HEARING PURSUANT TO CIV.R. 11[.]

{¶20}  In their first and second assignments of error, Cross-Appellants argue that the trial court erred in denying their motion for attorney fees, expenses and costs pursuant to R.C. 2323.51 and Civ.R. 11.  We review this matter for an abuse of discretion.  *See Ceol v. Zion Indus*., Inc., 81 Ohio App.3d 286, 291 (9th Dist.1992).  An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore,* 5 Ohio St.3d at 219.

{¶21} R.C. 2323.51(B)(1) proves that a court may award attorney fees to any party to a civil action who is adversely affected by frivolous conduct. R.C. 2323.51(A)(2)(a) states that "frivolous" conduct occurs when:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation[;]

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law[;]

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[;] [or]

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

"'R.C. 2323.51 does not purport to punish a party for failing on a claim. Rather, it addresses conduct that serves to harass or maliciously injure the opposing party in a civil action or is unwarranted under existing law and for which no good-faith argument for extension, modification, or reversal of existing law may be maintained.'" *Harold Pollock Co., L.P.A. v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 19, quoting *Indep. Taxicab Assn. of Columbus, Inc. v. Abate*, 10th Dist. Franklin No. 08CA-44, 2008-Ohio-4070, ¶ 22.

{¶22} Civ.R. 11 states, in relevant part, that:

The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. *For a willful violation of this rule*, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to

appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

(Emphasis added.) Further, Civ.R. 11 specifically requires that the frivolous conduct be willful; mere negligence is insufficient. *See Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, ¶ 9 (1st Dist.).

{¶23} Here, Cross-Appellants specifically allege that Mr. Giusti: (1) caused trial to be postponed multiple times, (2) delayed identifying expert witnesses, and (3) repeatedly stonewalled their attempts to depose his expert witnesses.

{¶24} In denying Cross-Appellants' motion, the trial court stated:

The trial of this matter was cancelled and rescheduled many times for various reasons. This case was also plagued with discovery disputes and unnecessary motions practice. Nevertheless, upon a review of the totality of the circumstances of this case, there is *no evidence* that [Mr. Giusti or his attorney] acted *maliciously* or with an *improper purpose* in these proceedings and there is no just cause to further sanction [Mr. Giusti or his attorney] for delays in identifying and deposing expert witnesses because this Court already sanctioned [Mr. Giusti] by excluding certain witnesses during the course of these proceedings.

(Emphasis added.)

{¶25} Based upon the record before us, and because the same trial judge presided over this case from its inception, and is especially familiar with the timing and nature of the pleadings, we cannot say that the decision denying Cross-Appellants' motion was unreasonable, arbitrary, or unconscionable. *See Ceol*, 81 Ohio App.3d. at 292 ("The trial judge, of course, will have had the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved. Consequently, a finding as to the commission of frivolous conduct is entitled to substantial deference upon review.")

{¶26} Accordingly, Cross-Appellants' first and second assignments of error are overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [CROSS-APPELLANTS'] MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS WITHOUT CONDUCTING A HEARING[.]

{¶27} In their third assignment of error, Cross-Appellants' argue that the trial court erred in denying their motion without first conducting a hearing.

{¶28} It is well-settled that "[a] trial court must hold a hearing before *granting* a motion for sanctions." (Emphasis sic.) *Harold Pollock Co., L.P.A.*, 2014-Ohio-1132, at ¶ 20. However, "[n]either R.C. 2323.51 nor Civ.R. 11 require a trial court to conduct a hearing before *denying* a motion for attorney fees." (Emphasis added.) *Donaldson v. Todd*, 174 Ohio App.3d 117, 2007-Ohio-6504, ¶ 9 (10th Dist.), citing *Capps v. Milhem,* 10th Dist. Franklin No. 03AP-251, 2003-Ohio-5212, ¶ 7; *Ohio Dept. of Adm. Servs. v. Robert P. Madison Internatl., Inc.*, 138 Ohio App.3d 388, 399 (10th Dist.2000); and *Woodworth v. Huntington Natl. Bank*, 10th Dist. Franklin No. 95APE02-219, 1995 WL 723664, *5 (Dec. 7, 1995). "If a trial court determines that there is no basis for an award of attorney fees, it may deny the motion without a hearing." *Donaldson* at ¶ 9.

{¶29} As stated above, the same trial judge presided over the entirety of the proceedings and was fully aware of the issues relating to continuances and discovery. With this knowledge, the trial court made a specific finding that there was no evidence of malice or willfulness on the part of Mr. Giusti and his attorney. The record before us supports this finding. Because there was no basis for awarding sanctions, we conclude that the trial court did not abuse its discretion in denying Cross-Appellants' motion without a hearing.

{¶30} Accordingly, Cross-Appellants' third assignment of error is overruled.

III.

{¶31} In overruling Mr. Giusti's sole assignment of error, the August 2, 2012 judgment of the Summit County Court of Common Pleas is affirmed. In overruling Cross-Appellants' first, second, and third assignments of error, the October 1, 2012 judgment of the Summit County Court of Common Pleas is affirmed.

Judgments affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to all parties.

_____
CARLA MOORE
FOR THE COURT

HENSAL, J.
CARR, J.
CONCUR

APPEARANCES:

WILLIAM T. WHITAKER, Attorney at Law, and ANDREA WHITAKER, Attorney at Law, for Appellant/Cross Appellee.

STACY R. DELGROS, Attorney at Law, and DOUGLAS G. LEAK, Attorney at Law, for Appellees/Cross Appellants.