MIDWEST FORD, INC., Appellant,

v.

C.T. TAYLOR COMPANY, INC. et al.; O'Brien Cut Stone, Inc., Appellee.

[Cite as *Midwest Ford, Inc. v. C.T. Taylor Co.* (1997), 118 Ohio App.3d 798.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2573–M.

Decided March 19, 1997.

*John C. Oberholtzer* and *James R. Leaver*, for appellant.

*Jonathan M. Steingass*, for appellee.

---

BAIRD, Judge.

Midwest Ford, Inc. appeals the Medina County Court of Common Pleas' granting of summary judgment in favor of O'Brien Cut Stone, Inc. ("O'Brien") on Midwest's claim that O'Brien breached an implied warranty in supplying a floor installed on Midwest's premises. We affirm.

In July 1992, Midwest entered into a contract with general contractor C.T. Taylor, Inc. to construct a showroom addition. The contractor subcontracted with Savoia, Inc. to install floor tiles. The subcontractor purchased the tile from O'Brien. The tile was manufactured by Permagrain, Inc. Midwest is not in contractual privity with O'Brien.

Midwest discovered alleged defects in the floor. Midwest filed a complaint on November 10, 1993 against the general contractor and the subcontractor. Midwest amended its complaint on January 20, 1995 to include O'Brien, specifically alleging breach of implied warranty, seeking recovery of the lost value of the showroom floor and $50,000 in additional compensatory damages.

O'Brien moved for summary judgment on the ground that no tort cause of action exists for mere economic loss due to a defective product. On May 2, 1995, the trial court granted the motion. Midwest appeals, assigning one error.

## I

Appellants' sole assignment of error states:

"The trial court erred as a matter of law by granting the defendant/appellee's motion for summary judgment"

■ In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.

■ Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267,

274; *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of summary judgment. *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1063–1064.

█ No questions of material fact are at issue here. The parties agree that Midwest seeks compensation for economic loss[1] due to an allegedly defective product, the showroom floor. We review the following legal conclusion made by the trial court in awarding summary judgment to O'Brien:

"Based upon *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624, the court finds there is no tort cause of action, in common law or under statute, for economic loss due to a defective product."

The trial court construed *Chemtrol's* holding too broadly. In *Chemtrol*, the court answered in the negative "the precise question * * * whether economic loss may be recovered in strict liability where the parties *are* in privity of contract." (Emphasis *sic.*) *Chemtrol Adhesives v. Am. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 49, 537 N.E.2d 624, 634. The court expressly disclaimed reconsideration of whether, *absent privity*, a plaintiff can recover economic losses under tort theories. *Id.* at 50, 537 N.E.2d at 634–635, fn. 7. Since Midwest is not in privity with O'Brien, *Chemtrol* is not dispositive.

█ Nevertheless, we affirm because we find that the common-law action in tort for purely economic loss from defective products, based upon implied warranty theory, is not available to commercial buyers. A trial court's judgment must be affirmed if any valid grounds are found on review to support it. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275.

## II

Midwest argues that this case may be decided upon the holding of *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 661 N.E.2d 714. The syllabus to *LaPuma* reads as follows:

"Although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges

---

1. Economic loss damages encompass (1) the difference between the actual value of the defective product and the value it would have had had it not been defective and (2) the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and resulting lost profits. *Sun Refining & Marketing Co. v. Crosby Valve & Gage Co.* (1994), 68 Ohio St.3d 397, 398, 627 N.E.2d 552, 554, citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 43–44, 537 N.E.2d 624, 628–630.

damages other than economic ones, and a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes."

The *LaPuma* syllabus countenances unspecified causes of action that "concern a product" and allege only economic damages and that lie beyond the scope of R.C. 2307.71 to 2307.79, Ohio's product liability statutes.

In the body of the *LaPuma* opinion, the court reaffirmed the existence of a noncommercial consumer plaintiff's common-law products liability claim, based upon implied warranty theory, to recover purely economic damages from a supplier of defective driveway material with whom the plaintiff was not in privity. *LaPuma v. Collinwood,* 75 Ohio St.3d at 67, 661 N.E.2d at 716–717. The court cited only *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 71 O.O.2d 66, 326 N.E.2d 267, to support its decision. In *Iacono,* the court held that a homeowner could sue in tort under implied warranty theory to recover economic damages [2] against the supplier of defective driveway material with whom the plaintiff was not in privity.

■ The issue before this court is whether the same cause of action should be available to commercial buyers of products who claim purely economic loss from product suppliers with whom they are not in privity. In answering in the negative, we leave Ohio product liability law as we found it.

In *Chemtrol, supra,* 42 Ohio St.3d at 46, 537 N.E.2d at 632, the court observed that "two cases are universally recognized as the seminal decisions on the question of whether economic loss is recoverable in a strict liability action" and cited *Santor v. A. & M. Karagheusian, Inc.* (1964), 44 N.J. 52, 207 A.2d 305, and *Seely v. White Motor Co.* (1965), 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145. In *Santor,* the New Jersey Supreme Court held that a plaintiff who had purchased carpeting from a third-party distributor could recover direct economic loss from the manufacturer under implied warranty theory and strict liability; in *Seely,* the California Supreme Court permitted a truck purchaser to recover economic loss from the manufacturer pursuant to an express warranty, but also held that a strict liability theory could not be used to recover for purely economic loss. *Chemtrol,* 42 Ohio St.3d at 47, 537 N.E.2d at 632–633.

In *Iacono,* which *LaPuma* followed, the Ohio Supreme Court cast its lot with the rationale of *Santor,* quoting the following language from the New Jersey Supreme Court:

---

**2.** In *Chemtrol,* the court observed that "while the damages sustained in *Iacono* were described as 'property' damage, they were in fact merely defects in the product itself which reduced the product's value, *i.e.,* economic damages." *Id.,* 42 Ohio St.3d at 49, 537 N.E.2d at 634.

"From the standpoint of principle we perceive no sound reason why the implication of reasonable fitness should not be attached to the transaction and be actionable against the manufacturer where the defectively made product has caused personal injury and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it." *Iacono v. Anderson Concrete Co.*, 42 Ohio St.2d at 93, 71 O.O.2d at 69, 326 N.E.2d at 271, quoting *Santor*, 44 N.J. at 60, 207 A.2d at 309; see, also, *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 13, 560 N.E.2d 206, 216, (Brown, J., dissenting).

The court has since noted that with respect to parties not in privity, *Santor* "has subsequently come to represent the minority view and has been the subject of substantial criticism." *Chemtrol*, 42 Ohio St.3d at 50, 537 N.E.2d at 635, fn. 7. The court further observed that the view expressed in *Seely v. White Motor Co.* (1965), 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145—that economic losses generally are not recoverable in a tort action—has been followed in "the overwhelming majority of jurisdictions." *Id.* at 46–47, 537 N.E.2d at 633 (collecting cases).

Nevertheless, in *LaPuma*, the court reaffirmed *Iacono*. In addition, nothing in the reasoning of *Santor* cited by the court in *Iacono* would limit the application of its principles to noncommercial plaintiffs. However, nowhere in *LaPuma* or *Iacono* does the court approve of commercial plaintiffs using this cause of action to seek damages for purely economic loss. The court has not squarely addressed this issue.

The New Jersey Supreme Court has squarely addressed this issue, in *Spring Motors Distributors v. Ford Motor Co.* (1985), 98 N.J. 555, 489 A.2d 660. In *Spring Motors*, that court held that a commercial truck buyer seeking economic damages for defective products was limited to his remedies under the Uniform Commercial Code, *i.e.*, the commercial buyer was denied a tort cause of action in strict liability to compensate purely economic loss. Thus, the New Jersey Supreme Court in effect limited *Santor* to the context of noncommercial buyers. We adopt that court's reasoning in *Spring Motors* with respect to commercial parties not in privity,[3] and set it forth at length:

"In the present case, which involves an action between commercial parties, we need not reconsider the *Santor* rule that an ultimate consumer may recover in strict liability for direct economic loss. To determine whether a commercial buyer may recover economic loss, however, we must reconsider the policies

---

**3.** Two of the defendants in *Spring Motors* were in privity with the plaintiff, one was not. In *Chemtrol*, the Ohio Supreme Court found persuasive the *Spring Motors* reasoning in denying an implied warranty cause of action for defective products to commercial parties in privity of contract seeking to recover for purely economic loss. *Chemtrol*, 42 Ohio St.3d at 50, 537 N.E.2d at 634–635.

underlying the doctrine of strict liability and those underlying the U.C.C. Those policy considerations include, among others, the relative bargaining power of the parties and the allocation of the loss to the better risk-bearer in a modern marketing system. As a general rule, the rights and duties of a buyer and seller are determined by the law of sales, which throughout this century has been expressed first in the Uniform Sales Act and more recently in the U.C.C. As indicated, however, strict liability evolved as a judicial response to inadequacies in sales law with respect to consumers who sustained physical injuries from defective goods made or distributed by remote parties in the marketing chain.

"The considerations that give rise to strict liability do not obtain between commercial parties with comparable bargaining power. Furthermore, perfect parity is not necessary to a determination that parties have substantially equal bargaining positions. Suffice it to state that Spring Motors had sufficient bargaining power to persuade Ford to install Clark transmissions in the trucks that were the subject of the contract.

"Insofar as risk allocation and distribution are concerned, Spring Motors is at least as well situated as the defendants to assess the impact of economic loss. Indeed, a commercial buyer, such as Spring Motors, may be better situated than the manufacturer to factor into its price the risk of loss caused by the purchaser of a defective product.

"Presumably, the price paid by Spring Motors for the trucks reflected the fact that Ford [with which Spring Motors was in privity] was liable for repair and replacement of parts only. By seeking to impose the risk of loss on Ford, Spring Motors seeks, in effect, to obtain a better bargain than it made. In such a context, the imposition of the risk of loss on the manufacturer might lead to price increases for all of its customers, including individual customers. As between commercial parties, then, the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement.

" * * *

"We also conclude that Spring Motors should be restricted to its U.C.C. remedies against Clark [with which Spring Motors was not in privity]. * * *

" * * *

" * * * [I]n most jurisdictions [Restatement of Torts 2d] section 402A precludes claims for economic loss.[4] In New Jersey, however, a consumer may

---

4. See, e.g., LaPuma v. Collinwood Concrete, 75 Ohio St.3d at 66, 661 N.E.2d at 715–716 (explaining how Ohio product liability statutory scheme excludes claims for purely economic damages).

recover direct economic loss in a strict liability action against a remote supplier. Because the Code provides the more appropriate framework for resolving disputes between commercial entities, we eschew permitting recovery for economic loss under principles of strict liability." (Citations omitted.) *Spring Motors*, 98 N.J. at 575–577, 582, 586, 489 A.2d at 670–671, 674, 676.

In the case before us, Midwest was in the position of Spring Motors, the general contractor in the position of Ford, and O'Brien in the position of Clark. Midwest has bargaining power at least equal to that of the contractor or O'Brien. Presumably, Midwest could have purchased warranty protection for the value of the floor from the contractor, but chose not to do so. Through this suit, Midwest seeks a better bargain than it struck. Permitting suit against O'Brien for strict liability for purely economic damages potentially shifts costs to O'Brien's other customers, be they noncommercial buyers or commercial buyers who manage contractual economic risks more conservatively than Midwest.

 The policies of product liability law articulated by Ohio courts would not be served by extending a *LaPuma*-style cause of action to commercial plaintiffs. In *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 621, 653 N.E.2d 661, 671, the Supreme Court, in deciding whether the product in question merited the application of strict liability, discussed "[t]he policies underlying products liability doctrine [which] are noted within the Restatement [of the Law 2d, Torts (1965), Section 402A, adopted by the Ohio Supreme Court in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267] and have been consistently recognized by this court." First, human life and safety are promoted by subjecting to strict liability manufacturers of defective products that cause harm. *Id.* Second, manufacturers are in a better position than those injured to internalize and redistribute the cost of injuries. *Id.* Third, strict liability relieves the "average consumer" of the burden of proving negligence. *Id.*

None of these policy reasons has any application to a claim by a commercial buyer for purely economic losses. Midwest offers no reason in precedent or policy to extend this cause of action to commercial buyers. The New Jersey Supreme Court has provided persuasive policy arguments for not extending to commercial plaintiffs the common-law claim for breach of implied warranty to recover economic loss caused by a defective product.

Midwest's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and SLABY, J., concur.