OPINION
{¶ 1} Plaintiffs-appellants, Brenda and Mark Tucker, appeal a decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Liberty Mutual Insurance Company ("Liberty"), on the ground that appellants' employer, H.J. Heinz ("Heinz"), was a self-insurer in the practical sense, and was therefore exempt from providing uninsured/underinsured motorist ("UM/UIM") coverage to appellants under R.C. 3937.18.[1]
 {¶ 2} In 1998, appellants were seriously injured when Elizabeth Wilson collided with their car. Wilson was solely at fault and her insurance company tendered the limits of her automobile liability policy, $100,000. At the time of the accident, appellants were employed by Portion Pac, Inc., a subsidiary of Heinz. Both Portion Pac, Inc. and Heinz were named insureds under a Business Automobile Policy (the "BA policy") issued by Liberty. The BA policy was a fronting agreement[2]
with liability limits of two million dollars and a matching deductible of two million dollars. The BA policy contained a bankruptcy clause that provided that "[b]ankruptcy or insolvency of the insured or the insured's estate will not relieve us of any obligations under this Coverage Form." The BA policy did not provide for UM/UIM coverage in the state of Ohio.
 {¶ 3} In July 2000, appellants filed an amended complaint seeking UIM benefits from Liberty under, inter alia, the BA policy. Although it did not state so, appellants' amended complaint was presumably based upon the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. FireIns. Co., 85 Ohio St.3d 3d 660, 1999-Ohio-292. Liberty filed a motion for summary judgment arguing that under the fronting nature of, and the matching liability limits and deductible of the BA policy, Heinz retained 100 percent of the risk of loss. As a result, Heinz was a self-insurer in the practical sense as defined in Grange Mut. Cas. Co. v. RefinersTransport Terminal Corp. (1986), 21 Ohio St.3d 47, and therefore exempt from providing UM/UIM coverage under R.C. 3937.18.
 {¶ 4} In a decision filed November 15, 2001, the trial court framed the issue as follows: "If Heinz is self-insured, then Liberty was not required to offer UM/UIM coverage. If Heinz is not self-insured and Liberty was required to offer Heinz UM/UIM coverage, then it must be determined whether Liberty made a proper offer of UM/UIM coverage and whether there was a proper rejection of UM/UIM coverage." The trial court found that under the matching liability limits and deductible of the BA policy, Heinz was a self-insurer in the practical sense, and therefore exempt under R.C. 3937.18. As a result, the trial court declined to address whether Liberty had made a proper offer of UM/UIM coverage and whether there was a proper rejection of UM/UIM coverage. By entry filed December 11, 2001, the trial court granted summary judgment to Liberty.[3]
 {¶ 5} On appeal, appellants' sole assignment of error claims that the trial court erred by granting summary judgment to Liberty. Appellants argue that because Liberty is not relieved, under the bankruptcy clause of the BA policy, of its obligations in the event of Heinz's bankruptcy or insolvency, Heinz does not retain 100 percent of the risk of the loss, and therefore is not a self-insurer in the practical sense.
 {¶ 6} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
 {¶ 7} An appellate court's standard of review on appeal from a summary judgment is de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. An appellate court reviews a trial court's disposition of a summary judgment motion independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co.
(1997), 118 Ohio App.3d 798, 800.
 {¶ 8} In determining whether an entity is self-insured, courts look at who bears the risk of loss. Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015, at ¶ 35. "Self-insurance is not insurance; it is the antithesis of insurance." Physicians Ins. Co. ofOhio v. Grandview Hosp. Med. Ctr. (1988), 44 Ohio App.3d 157, 158. "[W]hile insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting." Jennings v. Dayton
(1996), 114 Ohio App.3d 144, 148. Rather, "[s]elf-insurance `is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.'" Physicians at 158.
 {¶ 9} R.C. 4509.45 sets forth the specific requirements for being a self-insurer in the motor vehicle context, and provides in relevant part that proof of financial responsibility may be given by filing a surety bond as provided in R.C. 4509.59 or a certificate of self-insurance as provided in R.C. 4509.72. See R.C. 4509.45(C), (E). As the trial court found, Liberty admitted that Heinz does not hold a certificate of self-insurance pursuant to R.C. 4509.45(E). There is no evidence in the record that Heinz is a surety bond principal pursuant to R.C. 4509.45(C). Nevertheless, as previously noted, Liberty argued in the trial court, and the trial court found, that the matching deductible language in the BA policy made Heinz a self-insurer in the practical sense as defined in the Ohio Supreme Court's decision in Grange.
 {¶ 10} In Grange, a truck driver employed by Refiners was fatally injured by an uninsured motorist while working for Refiners. At the time of the accident, Refiners met state financial responsibility requirements for its truck fleet through a financial responsibility bond coupled with excess insurance coverage, none of which contained uninsured motorist ("UM") coverage. After Grange, the decedent's insurance company, settled with the decedent's estate, it filed a declaratory judgment against Refiners alleging that as a self-insurer, Refiners was obligated under R.C. 3937.18 to provide UM coverage for the protection of its drivers.
 {¶ 11} The supreme court framed the issue before it as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements" of R.C. 3937.18. Grange, 21 Ohio St.3d at 48. The supreme court found that although Refiners' effort to meet its financial responsibility requirements by purchasing a financial responsibility surety bond and two excess insurance policies did not make it a self-insurer "in the legal sense contemplated by R.C. 4509.45(D) and4509.72, [such effort made it a self-insurer] in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id. at 49.
 {¶ 12} Although the supreme court found that Refiners' status was that of a bond principal and not a self-insurer, the court ultimately concluded that "whether [Refiners] is considered a bond principal, self-insurer, or both," Refiners was not subject to the requirements of R.C. 3937.18. Id. at 50. In contrast to its narrow framing of the issue, the supreme court broadly held that "[t]he uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at syllabus.
 {¶ 13} Grange did not involve a fronting policy with matching liability limits and deductible. Nevertheless, relying upon Grange, several cases (cited by Liberty) subsequently held that employers subject to a fronting policy with matching liability limits and deductible qualified as self-insurers in the practical sense. Those cases reasoned that since the deductible of those fronting policies was exactly equal to the liability limits of the policies, the risk of loss never left the employers. See Lafferty v. Reliance Ins. Co. (S.D.Ohio 2000),109 F. Supp.2d 837; McCollum v. Continental Ins. Co. (Apr. 9, 1993), Lucas App. No. L-92-141; Fonseca v. Fetter (June 15, 2001), Lucas C.P. No. CI 99-4712; and DeWalt v. State Farm Ins. Cos. (Sept. 11, 1997), Lake C.P. No. 96CV001173.
 {¶ 14} Unlike the case at bar, none of the foregoing cases involved a bankruptcy clause. While the policies in those cases may well have had bankruptcy clauses similar to the bankruptcy clause in the BA policy, their analysis was strictly based upon the existence of a fronting policy with matching liability limits and deductible. In the case at bar, the bankruptcy clause of the BA policy clearly provides that were Heinz to file bankruptcy or otherwise become insolvent, Liberty would not be relieved of its obligation to pay a valid loss during the term of the policy to a third party. Thus, although Liberty argues that Heinz retains full risk under the BA policy, the language of the policy refutes that argument. It follows that however minuscule the risk to Liberty may be, Heinz does not retain 100 percent of the risk of loss. Rather, some risk has shifted to Liberty.
 {¶ 15} As previously stated, in determining whether an entity is self-insured, courts look at who bears the risk of loss. "[W]hile insurance shifts the risk of loss * * *, self-insurance involves no risk-shifting." Jennings, 114 Ohio App.3d at 148. We therefore find that since Heinz does not retain 100 percent of the risk of loss under the bankruptcy clause of the BA policy, Heinz is not a self-insurer in the practical sense and is not exempt from R.C. 3937.18. See Young v.Michigan Mut. Ins. Co. (Mar. 5, 2002), Lucas C.P. No. CI00-5177;Hodnichak v. Gray (Dec. 14, 2001), Summit C.P. No. CV 1999-09-3844; andCaylor v. Pacific Emp. Ins. Co. (Aug. 3, 2001), Miami C.P. No. 99-400.
 {¶ 16} We are mindful of this court's decision in Marshall v. ACEUSA, Warren App. No. CA2001-09-083, 2002-Ohio-2419. However, we find that Marshall is factually different and that its holding does not apply to or conflict with our decision in the case at bar. In Marshall, the employee's estate brought a declaratory judgment action against the employer alleging a right to UIM coverage under the employer's fronting policy with ACE USA. Although we referred in Marshall to Grange andLafferty in our analysis as to whether the employee's estate was entitled to UIM coverage under the fronting policy, we ultimately concluded that whether the employer was a self-insured was immaterial. While the BA policy in the case at bar did not provide for UM/UIM coverage, the fronting policy in Marshall did provide UIM coverage. Thus we held that since the policy actually included UIM coverage, the employee's estate was entitled to UIM coverage.
 {¶ 17} We therefore find that the trial court erred by finding Heinz to be a self-insurer in the practical sense and by granting summary judgment in favor of Liberty. We reverse the trial court's judgment and remand the case for the trial court to determine whether Liberty made a proper offer of UM/UIM coverage and whether there was a proper rejection of UM/UIM coverage. Appellants' assignment of error is well-taken and sustained.
 {¶ 18} Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
WALSH, P.J., and VALEN, J., concur.
[1] The version of R.C. 3937.18, which was then applicable, required insurers to offer UM/UIM coverage with every automobile liability or motor vehicle liability policy delivered or issued in Ohio. The named insured could only reject or accept both coverages offered pursuant to R.C. 3937.18. Failure to offer UM/UIM coverage resulted in the automatic extension of that coverage by operation of law. See Gyori v. JohnstonCoca-Cola Bottling Group, Inc., 76 Ohio St.3d 565, 1996-Ohio-358. R.C.3937.18 was amended by S.B. 97, effective October 31, 2001, to "eliminate any requirement of the mandatory offer of [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages;" to "eliminate the possibility of [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages being implied as a matter of law in any insurance policy;" to "eliminate any requirement of a written offer, selection, or rejection form for [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages from any transaction in an insurance policy." See Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015.
[2] A "fronting agreement" is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states. McCollum v. ContinentalIns. Co. (Apr. 9, 1993), Lucas App. No. L-92-141, 1993 WL 382455 at *3.
[3] At the time of the accident, there was also another policy issued to Heinz by Liberty, that is, a commercial general liability ("CGL") policy with a matching liability limit and deductible amount of two million dollars. In its entry granting summary judgment to Liberty, the trial court found that in light of the matching liability limits and deductible of the CGL policy, Heinz was also a self-insurer in the practical sense under the CGL policy, and therefore exempt under R.C.3937.18.