[Cite as *Apostolos Group, Inc. v. BASF Constr. Chems., L.L.C.*, 2011-Ohio-2238.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

APOSTOLOS GROUP, INC.
dba THOMARIOS

      Appellant

      v.

BASF CONSTRUCTION CHEMICALS,
LLC

      Appellee

C.A. No.     25415

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2007-10-7262

DECISION AND JOURNAL ENTRY

Dated: May 11, 2011

---

CARR, Judge.

**{¶1}** Appellant, The Apostolos Group, Inc., dba Thomarios (hereinafter referred to as "Thomarios") appeals the order from the Summit County Court of Common Pleas granting a motion to dismiss count one of the complaint in favor of appellee, BASF Construction Chemicals, LLC. (hereinafter referred to as "BASF"). This Court affirms.

I.

**{¶2}** This case was initiated by Thomarios on October 17, 2007, against multiple defendants and eventually maintained solely against BASF. Thomarios subsequently filed amended complaints on November 9, 2007, and June 26, 2008. Thomarios filed a third amended complaint on April 8, 2009, against BASF, the sole remaining defendant. Count one of the third amended complaint contained individual claims for breach of implied warranty, common law negligence, strict liability, and punitive damages. Count two of the complaint contained a claim

for breach of express warranty under R.C. 1302.26. On April 20, 2009, BASF filed an answer to the third complaint. On that same day, BASF filed a motion to dismiss count one of the third amended complaint and the claim for punitive damages pursuant to Civ.R. 12(B)(6). On April 23, 2009, Thomarios filed its response to BASF's motion to dismiss. Subsequently, on April 29, 2009, the trial court issued an order dismissing count one of the third amended complaint and the associated punitive damages claim. Following the dismissal of count one of the third amended complaint, the case proceeded under the claim for breach of express warranty under R.C. 1302.26. A bench trial was held before a magistrate in December of 2009. The magistrate's decision granting a verdict in favor of BASF was issued on February 12, 2010, and subsequently adopted by the trial court on May 14, 2010. Thomarios filed a notice of appeal on May 24, 2010.

{¶3} The following substantive facts appeared in the third amended complaint and are not in dispute on appeal. In October of 2005, Thomarios was contacted by the Akron Metropolitan Housing Authority ("AMHA") to apply deck coating on exterior balconies at the Fowler Apartments in Akron, Ohio. The architect for the project, Rasmussen Design Group, Inc. (hereinafter referred to as Rasmussen), specified the concrete deck coating for Thomarios to apply to the exterior decking of the Fowler Apartments. Rasmussen indicated that the concrete deck coating, known as Sonoguard, was manufactured by BASF. At some point after the initiation of Thomarios' deck coating process, Rasmussen advised Thomarios that the deck coating remained "gummy" and "sticky" and was not hardening as it was supposed to according to the manufacturer's directions. These discussions occurred on or about October 18, 2005, and were memorialized in a letter dated October 19, 2005, from Rasmussen to Thomarios. Because the deck coating remained "gummy" and "sticky," falling leaves stuck to the concrete decking and such decking was rendered unfit for its intended purpose, and a good portion of the total job

had been insufficiently completed as of late October 2005. Rasmussen requested that Thomarios contact the manufacturer's representative for BASF and ask them how to proceed to cure the defect so that the deck coating would harden and not remain "gummy" and "sticky."

{¶4}    Thomarios contacted the manufacturer's representative as requested and BASF's representative instructed Thomarios to place a "top coat" of sealer on the defective areas that would cure the defects. Despite following BASF's instructions concerning how to repair the deck coatings problems, the deck coating remained "gummy" and "sticky" and BASF's instructions for repair failed. Thomarios had to make its own determination about how to repair the defects caused by the defective product which eventually caused Thomarios to strip the entire defective coating off the concrete decking at their own cost. BASF then provided Thomarios another batch of deck sealant to apply to the decking of the Fowler Apartments after Thomarios stripped the prior defective layer. The second batch of deck coating performed to expectations as well as the manufacturer's representations, and this solution was solely attributable to Thomarios.

{¶5}    Thomarios complied with all requirements set forth in all warranties associated with the product at issue and applied the product as directed by the manufacturer's specifications at all times. A reasonable examination of the goods by Thomarios prior to purchase would not have disclosed any defects which would have been readily apparent to Thomarios. Thomarios suffered economic damages in regard to the repair of the decking at the AMHA project at issue to which the defective product was applied, needed to be removed, then once again applied, with all labor and expenses at Thomarios' cost, less the cost of the new deck coating product.

{¶6}    Thomarios is a commercial consumer and the product at issue was purchased to be applied to a commercial job and the parties to this case were not in privity with each other at

the time of the purchase, as the product was purchased at WL Tucker Supply Company in Summit County, Ohio. Thomarios is a commercial consumer who is maintaining a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss. Upon information and belief, the Sonoguard product at issue has previously failed in the same type of manner as it has failed in the instant case, and such failure can be attributed to a defect in the product and not application by Thomarios.

{¶7} On appeal, Thomarios raises one assignment of error. While Thomarios challenges the trial court's dismissal of the claim for breach of implied warranty in tort and the associated punitive damages claim, it does not challenge the trial court's judgment on the breach of express warranty issue on appeal.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT DISMISSED, PURSUANT TO CIV.R. 12(B)(6), COUNT I OF THE APPELLANT'S THIRD AMENDED COMPLAINT FOR BREACH OF IMPLIED WARRANTY IN TORT AND THE ASSOCIATED PUNITIVE DAMAGES CLAIM."

{¶8} In its sole assignment of error, Thomarios argues that the trial court erred in granting BASF's motion to dismiss count one of the third amended complaint pursuant to Civ.R. 12(B)(6). This Court disagrees.

{¶9} An appellate court reviews a trial court order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, at ¶4-5. In reviewing whether a motion to dismiss should be granted, an appellate court must accept as true all factual allegations in the complaint and all

reasonable inferences must be drawn in favor of the nonmoving party. *Rossford* at ¶5; *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192. "To prevail on a Civ.R. 12(B)(6) motion to dismiss, it must appear on the face of the complaint that the plaintiff cannot prove any set of facts that would entitle him to recover." *Raub v. Garwood*, 9th Dist. No 22210, 2005-Ohio-1279, at ¶4, citing *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 245.

{¶10} In granting BASF's motion to dismiss, the trial court relied on this Court's precedent in *Midwest Ford, Inc. v. C.T. Taylor Co., Inc.* (1997), 118 Ohio App.3d 798, and refused to apply the Tenth District's decision in *Ohio Dept. of Admin. Servs. v. Robert P. Madison Internatl., Inc.* (2000), 138 Ohio App.3d 388 to the facts of this case. In support of its assignment of error, Thomarios argues this court must reconsider the scope of its precedent in *Midwest Ford*. Thomarios argues that there should be no distinction between a commercial and noncommercial consumer in cases where the consumer is not in privity with the manufacturer and enjoys only limited bargaining power. Thomarios contends that a standard which does not permit a commercial consumer who enjoys limited bargaining power and is not in privity with a manufacturer to assert an implied warranty claim leads to an unjust result. Thomarios argues in its merit brief that, "[t]he reality is, the best analysis is probably a hybrid analysis taking the best of the decisions between *Midwest Ford* and *Robert P. Madison*."

{¶11} In *Midwest Ford*, this Court expressly held that a "common-law action in tort for purely economic loss from defective products, based upon implied warranty theory, is not available to commercial buyers." *Midwest Ford*, 118 Ohio App.3d at 801. This Court noted that Ohio courts have recognized that the products liability doctrine serves to advance the following policy concerns:

> "First, human life and safety are promoted by subjecting to strict liability manufacturers of defective products that cause harm. Second, manufacturers are

in a better position than those injured to internalize and redistribute the cost of injuries. Third, strict liability relieves the 'average consumer' of the burden of proving negligence." *Midwest Ford*, 118 Ohio App.3d at 805, citing *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp*. (1995), 73 Ohio St.3d 609, 621.

We then noted that "[n]one of these policy reasons has any application to a claim by a commercial buyer for purely economic losses." *Midwest Ford*, 118 Ohio App.3d at 805.

{¶12} In resolving the issue of whether a commercial consumer can assert a claim based on an implied warrant theory against a commercial manufacturer, this Court in *Midwest Ford* conducted an in-depth discussion of pertinent case law. This Court distinguished the facts at issue from the facts of *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 49, where the Supreme Court of Ohio answered in the negative the question of "whether economic loss may be recovered in strict liability where the parties *are* in privity of contract." (Emphasis in original). This Court also discussed the precedent established in *Santor v. A. & M. Karagheusian, Inc*. (1964), 207 A.2d 305, and *Seely v. White Motor Co*. (1965), 403 P.2d 145, cases the *Chemtrol* court noted are "universally recognized as the seminal decisions on the question of whether economic loss is recoverable in a strict liability action." *Midwest Ford*, 118 Ohio App.3d at 802, quoting *Chemtrol*, 42 Ohio St.3d at 46. This Court also considered the Supreme Court of Ohio's decisions in *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, and *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88. In reaching our decision, however, we adopted the reasoning set forth by the New Jersey Supreme Court in *Spring Motors Distributors, Inc. v. Ford Motor Co.* (1985), 489 A.2d 660, where the court held that a commercial truck buyer seeking economic damages for defective products could not recover in a tort cause of action in strict liability to compensate for purely economic loss and was limited to his remedies under the Uniform Commercial Code. The result in *Spring Motors* had the effect of

limiting *Santor* to the context of noncommercial buyers. *Midwest Ford*, 118 Ohio App.3d at 803.

{¶13} In adopting the reasoning of the New Jersey Supreme Court in *Midwest Ford*, this Court set forth at length the analysis in *Spring Ford*. In determining whether a commercial buyer can recover economic loss, the New Jersey Supreme Court emphasized the need to consider the policies underlying the doctrine of strict liability as well as the U.C.C. *Midwest Ford*, 118 Ohio App.3d at 803-804, quoting *Spring Motors*, 489 A.2d at 670.

> "Those policy considerations include, among others, the relative bargaining power of the parties and the allocation of the loss to the better risk-bearer in a modern marketing system. As a general rule, the rights and duties of a buyer and seller are determined by the law of sales, which throughout this century has been expressed first in the Uniform Sales Act and more recently in the U.C.C. As indicated, however, strict liability evolved as a judicial response to the inadequacies in sales law with respect to consumers who sustained physical injuries from defective goods made or distributed by remote parties in the marketing chain." Id.

The New Jersey Supreme Court further notes that the "considerations that give rise to strict liability do not obtain between commercial parties with comparable bargaining power." Id. The New Jersey Supreme Court recognized that "perfect parity is not necessary to a determination that parties have substantially equal bargaining positions." Id at 671.

{¶14} The Third District subsequently reached the same conclusion this Court reached in *Midwest Ford* and held that the "policies of product liability law as articulated by Ohio courts would not be served by extending a strict-liability cause of action to commercial plaintiffs." *Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App.3d 594, 2003-Ohio-4252, at ¶35. Thomarios notes that in *Robert P. Madison*, the Tenth District held that "[a] consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss[.]" *Robert P. Madison*, 138 Ohio App.3d

at 397. The Tenth District stated that it could find "no basis for distinguishing between so-called commercial and noncommercial buyers." Id. at ¶396. The court further stated that no distinction was necessary because "the doctrine of implied warranty is designed to protect 'consumers' who are not in privity of contract." Id. at ¶396.

{¶15} Under the facts of this case, this Court declines Thomarios' invitation to depart from our established precedent. There is no question that Thomarios was engaged in a commercial endeavor when it agreed to apply deck coating on exterior balconies at the Fowler Apartments. The Supreme Court of Ohio has held that there is no distinction between implied warranty in tort and strict liability in tort. *Chemtrol*, 42 Ohio St.3d at 46. The aforementioned policies set forth by Ohio courts underlying the products liability doctrine would not be advanced by treating a commercial consumer such Thomarios as a noncommercial consumer. The Supreme Court has noted that the "first and foremost objective of strict liability is to promote public safety." *Queen City*, 73 Ohio St.3d at 621. The foremost policy concern underlying the strict liability doctrine is not an issue here. This case does not involve a situation where an average customer was placed in physical danger due to the purchase of a defective product. Rather, a commercial consumer purchased a product for use in a commercial context and suffered purely economic losses. The second objective of products liability stems from a cost-shifting rationale and recognizes that a manufacturer is in a better position to internalize the cost of injuries than the general public. Id. In this case, the product was not purchased by a member of the general public. On the contrary, the product was purchased by a commercial consumer who was engaged in a profit-seeking endeavor. The third justification for strict liability is that "proving negligence can be difficult and costly for the average consumer." Id. Unlike the average customer, Thomarios, as a commercial entity, is not in need of relief from the burdens of

proving negligence. It is axiomatic that a commercial entity is presumed to have a higher degree of legal sophistication than the average customer who purchases a product for noncommercial use.

{¶16} Thus, while the relative bargaining power of a commercial consumer will vary from case to case, the commercial consumer functions in a different capacity than the average customer. The fact that Thomarios did not have an opportunity to negotiate the warranty and product formulation of the Sonoguard does not mean that it was similarly situated as a member of the general public making a purchase for personal use. As a commercial consumer, Thomarios was presumably aware of the inherent risks involved in entering into a commercial endeavor. By making the decision to engage in the commercial endeavor of applying the deck coating at the Fowler apartments, Thomarios entered into an arrangement where Rasmussen could specify the type of deck coating used for the project. As the policies underlying the strict liability doctrine would not be served by allowing Thomarios to assert an implied warranty claim, the trial court did not err in following *Midwest Ford* and granting BASF's motion to dismiss pursuant to Civ.R. 12(B)(6).

{¶17} The assignment of error is overruled.

III.

{¶18} Thomarios' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶19} It seems as if Thomarios is in a proverbial Catch 22 position. It appears as if he was directed by Rasmussen to use the deck coating manufactured by BASF. There is nothing in the record to suggest that he had any choice in determining the coating or the manufacturer. He was not in direct privity with BASF, because the deck coating was sold through a supplier. Thomarios appears to have done everything according to specifications, yet when the product failed, he was prevented from pursuing a claim for breach of implied warranty. The result seems inequitable, notwithstanding the established precedent of the Ohio Supreme Court. As a result, I concur in judgment only.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶20}  I reluctantly concur in the judgment based upon this Court's precedent in *Midwest Ford, Inc. v. C.T. Taylor Co., Inc.* (1997), 118 Ohio App.3d 798.  Nonetheless, if I were writing without regard to stare decisis, I would sustain Thomarios' assignment of error.  I see no logical reason to treat Thomarios, who acted just like a consumer, differently than non-commercial consumers.  In this era of mega stores, businesses resemble consumers. Just as the average consumer, businesses do not have privity of contract with the manufacturer of a product, but purchase products through intermediaries. To say that Thomarios had some heightened bargaining power due its commercial status when buying a brand name product which he was specifically instructed to purchase from a large retail store seems disingenuous at best.

{¶21}  Further, while the Supreme Court's implied warranty cases involving parties not in privity have involved a non-commercial party as the plaintiff, the Supreme Court of Ohio has never emphasized this fact or limited its holdings only to non-commercial plaintiffs.  See, e.g. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* 1989, 42 Ohio St.3d 40, 49 ("*Inglis* and *Iacono* stand for the proposition that in Ohio an action in tort for breach of express or implied warranty, or an action in strict liability, may be maintained for purely economic loss. However, notably absent from these cases is the element of privity of contract between the injured plaintiff and the manufacturer-defendant."); *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 67.  Moreover, while the Supreme Court of Ohio has cited *Spring Motors Distribs., Inc. v. Ford Motor Co.* (1985), 98 N.J. 555, with approval, it has never abandoned its holdings in *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88 or *LaPuma*.  See *Chemtrol Adhesives, Inc.,* 42 Ohio St.3d at 43.  Furthermore, in *Chemtrol*, the Supreme Court also observed that the doctrine of implied warranty is to protect *consumers* who are not in privity of contract and it did

not make any distinction between a commercial or noncommercial consumer. *Chemtrol Adhesives, Inc.* 42 Ohio St.3d at 49. The holdings of *Iacono, LaPuma* and *Chemtrol* do not prohibit a commercial consumer's recovery in tort under an implied warranty theory where privity is absent. Thus, I believe *Midwest Ford, Inc.,* which did just that, *Midwest Ford, Inc.*, 118 Ohio App.3d at 801, was wrongly decided. Accordingly, absent our precedent in *Midwest Ford, Inc.,* I would conclude that Thomarios has the same right to recover under an implied warranty claim as a non-commercial consumer.


APPEARANCES:

JAMES J. COLLUM , Attorney at Law, for Appellant.

JAMES T. DIXON, NORA LOFTUS, and FRANTZ WARD, Attorneys at Law, for Appellee.