WEIL et al.

v.

ESTE OILS COMPANY, Appellant, et al.; Federated Insurance Company, Appellee.

[Cite as *Weil v. Este Oils Co.* (1994), 93 Ohio App.3d 759.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930068.

Decided March 23, 1994.

*Cash, Cash, Eagen & Kessel* and *Robert B. Cash,* for defendant/third-party plaintiff-appellant Este Oils Company.

*Rendigs, Fry, Kiely & Dennis, Jonathon P. Saxton* and *W. Roger Fry,* for third party/defendant-appellee Federated Insurance Company.

---

*Per Curiam.*

Defendant/third-party plaintiff-appellant Este Oils Company ("Este") appeals from the denial of its motion for summary judgment and the granting of summary judgment in favor of third-party defendant-appellee Federated Insurance Company ("Federated") in a dispute over whether Federated had a duty to defend and indemnify Este in an action brought against Este by plaintiffs Mark R. and Melody C. Weil ("the Weils") for damage incurred as a result of Este's pumping of approximately three hundred gallons of oil into the Weils' basement.

In July 1990, the Weils contracted with defendant Miller/Connelly Heating and Cooling Services ("Miller") for the conversion of their home heating system from oil to natural gas. Prior to this time, the Weils had an ongoing automatic fuel-oil delivery arrangement with Este. Pursuant to its contract with the Weils, Miller removed the Weils' oil heating system, including the oil tank, and installed a natural-gas heating system. However, the oil inlet plug, located on the exterior of the house, was neither plugged nor removed.

In November 1990, Este delivered approximately three hundred gallons of home heating oil into the Weils' oil inlet pipe. Due to the combination of the removal of the oil tank and the failure of the inlet pipe to be either plugged or removed, the oil was pumped directly into the Weils' home, causing damage.

The Weils filed suit against both Miller and Este, asserting negligence and recklessness on the part of Este in delivering and pumping the oil into their home. Este then turned to Federated, its business automobile liability insurer, to defend and indemnify Este in the lawsuit. Federated refused, claiming that its insurance contract precluded coverage for this event, which resulted in Este's filing of a third-party complaint against Federated. Both Este and Federated filed motions for summary judgment on the issues of coverage under the insurance policy and the duty, if any, to defend and indemnify Este.

The trial court granted Federated's motion and denied Este's motion. Pursuant to the filing of its timely appeal, Este now raises two assignments of error for our review.

In its first assignment of error, Este argues that the trial court erred by refusing to consider the affidavits of two professional grammarians. The affidavits essentially provided the trial court with the two experts' personal opinions as to what constitutes ordinary and commonly accepted rules of English grammar in order to assist the court in interpreting the insurance policy. The trial court determined that the two individuals' sworn statements were not cognizable under Civ.R. 56(E) or Evid.R. 702, and we agree.

Civ.R. 56(E) provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts *as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to matters stated therein. [Emphasis ours.]"

Pursuant to Evid.R. 702, expert opinions may be offered if the purported expert has some specialized knowledge that would assist the trier of fact to understand the evidence or to determine a fact in issue. However, where, as here, the expert testimony is offered on a matter that is neither complex nor beyond the comprehension of the average person, a trial court does not abuse its discretion by excluding the evidence. See *Berry v. Motorists Ins. Co.* (1983), 13 Ohio App.3d 228, 13 OBR 280, 468 N.E.2d 922.

We cannot say that the trial court erred in failing to consider the affidavits. The trial court did not abuse its discretion by deeming the affidavits inadmissible under Evid.R. 702, and, therefore, did not err in concluding that the affidavits were not cognizable under Civ.R. 56(E). The first assignment of error is overruled.

The second assignment of error attacks the trial court's granting of summary judgment in favor of Federated. The trial court concluded that the damage sustained by the Weils was not a loss covered under Federated's business automobile policy issued to Este, and that certain exclusionary provisions of the policy precluded the existence of any duty on Federated's part to defend Este in the Weil action. Based upon our review of the record, as discussed below, we are compelled to conclude that material issues of fact exist, and that, therefore, the lower court erred in granting summary judgment to Federated.

The trial court relied essentially upon three of the insurance policy's provisions as its basis for finding that the policy provided no coverage for the mishap at issue, and that Federated therefore had no duty to defend Este in the Weil suit.

Two of the policy's provisions address "pollution" exclusions. Under Section II(B)(11)(a), insurance coverage does not apply to:

" 'Bodily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, release of pollutants:

"(1) That are, or that are contained in any property that is:

"(a) Being transported * * * or handled for movement * * * from the covered 'auto';

"(b) Otherwise in the course of transit by the insured; or

"(c) Being stored, disposed of, treated or processed in or upon the covered 'auto';

" * * * *

"(3) After the pollutants * * * are moved from the covered 'auto' to the place where they are finally delivered * * * by the 'insured.' "

Endorsement CA–F–64 Ed. 7–88(B)(2) further provides that the above pollution exclusion does not apply to the 'discharge, dispersal, release or escape of pollutants' other than acids, certain explosives and radioactive materials under certain conditions.

▆ To fall within the purview of either of these pollution exclusions, the heating oil at issue must have been a "pollutant," which is defined under the policy at Section II(B)(11)(b) as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The trial court concluded, as a matter of law, that "the property damage incurred by the volitious [*sic*] act of Este is an actual discharge of a pollutant (fuel oil) which is excluded under [Section II(B)(11)(a) ]." We believe, however, that the determination of whether the oil discharged at the Weil residence constituted a "pollutant" under the policy involved a question of fact. Absent either a stipulation by the parties that the oil was a "pollutant" under the terms of the policy, or the court's taking judicial notice of this fact on the record, we conclude that the trial court erred by determining that the oil at issue was a "pollutant" as a matter of law.

▆ The third policy provision cited by the trial court in support of its determination to grant summary judgment to Federated was endorsement CA 23–05–01–87, which addresses the "wrong delivery of liquid products." Under this provision, insurance does not apply to:

" 'bodily injury' or 'property damage' resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one

liquid for another, if the 'bodily injury' or 'property damage' occurs after delivery has been completed."

The record before us reveals that Este claims that it never received notice of the Weils' conversion of their home heating system from oil to gas. Este essentially maintains that the November 7, 1990 delivery of the oil was made in accordance with the automatic delivery agreement with the Weils. The Weils' complaint, however, claims that they contacted Este to advise the company that they were converting the heating system to natural gas. The Weils further contend that an Este representative was dispatched to their home to inspect the oil tank and advised them that due to the small amount of oil remaining in the tank it was unnecessary to drain it prior to its removal from the home.

Based on the above, we hold that genuine issues of fact remain as to whether the oil was delivered into the "wrong receptacle" within the meaning of Endorsement CA 23–05–01–87. If a factfinder were to believe Este's account, it could be said that the oil that ultimately damaged the Weils' basement was delivered by Este without notice of the oil tank's removal in accordance with its ongoing contract with the Weils, and arguably was not delivered into the "wrong receptacle." On the other hand, if the Weils' version of the facts were to be believed, then the delivery of the oil into their tankless basement arguably could be deemed to be a "wrong delivery of a liquid product" by Este and thereby preclude Este from coverage under the policy's CA 23–05–01–87 exclusion. Accordingly, the trial court erred when it determined, as a matter of law, that "endorsement CA 23–05–01–87 specifically excludes the wrong delivery of a liquid product to the wrong receptacle, which is precisely what happened here."

In light of the above, we sustain Este's second assignment of error. There exist triable issues of material fact. Summary judgment in favor of Federated, therefore, was improvidently granted under Civ.R. 56. See *Addison v. The Ohio River Co.* (Mar. 18, 1992), Hamilton App. Nos. C–910057 and C–910059, unreported, 1992 WL 52719.

Based upon our disposition of the second assignment of error, the trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with law.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., SHANNON and KLUSMEIER, JJ., concur.