OPINION
{¶ 1} Plaintiffs-appellants, Jamie Churchill, individually and as executor of the estate of Michael Churchill, and Alexis Churchill, a minor, by and through her guardian and mother, Jamie Churchill, appeal a decision of the Butler County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, General Motors Corporation and National Union Fire Insurance Company, in a declaratory judgment action, on the ground that appellee General Motors Corporation was self-insured in the practical sense, and therefore exempt from providing uninsured/underinsured motorist coverage to appellants under R.C. 3937.18. We affirm the judgment of the trial court.
 {¶ 2} On January 5, 1999, Michael Churchill died as the result of injuries sustained in an automobile accident. Michael was insured by State Farm Mutual Automobile Insurance Company under a policy that provided uninsured/underinsured ("UM/UIM") coverage of $100,000 per person, and $300,000 per accident. Michael's wife, Jamie Churchill, brought a wrongful death suit against the alleged tortfeasor, Earl Wyatt. Wyatt was insured under a State Farm Mutual automobile policy that provided liability coverage with limits of $50,000 per person and $100,000 per accident.
 {¶ 3} At the time of his death, Churchill was employed by appellee, General Motors Corporation ("GM"). GM had established a "risk management program" with National Union Fire Insurance Company ("National Union"). The program consisted of three insurance policies issued by National Union: an automobile fronting policy[1] with a policy limit of $300,000 and deductible of $300,000; an excess business automobile fronting policy with a policy limit of $9,700,000 and a deductible of $9,700,000; and a general liability fronting policy with a policy limit of $10,000,000 and a deductible of $10,000,000. The automobile policy provides UM/UIM limits of $12,500 per person and $25,000 per accident.
 {¶ 4} Each policy contains reimbursement clauses which require GM to reimburse National Union for any payments it makes pursuant to the policies. The policies further contain an indemnity clause which requires GM to reimburse National Union for any liability incurred under the policies or any expense in defending against any loss. GM's duty to indemnify is secured by a trust which names National Union as its beneficiary.
 {¶ 5} Churchill brought a declaratory judgment action against appellees, alleging that they had a duty to provide UM/UIM motorist coverage under R.C. 3937.18. The version of R.C. 3937.18, which was then applicable, required insurers to offer UM/UIM coverage with every automobile liability or motor vehicle liability policy delivered or issued in Ohio. Only the named insured could reject or accept coverage pursuant to R.C. 3937.18. Failure to offer UM/UIM coverage resulted in the automatic extension of that coverage by operation of law. See Gyori v.Johnston Coca-Cola Bottling Group, Inc., 76 Ohio St.3d 565,1996-Ohio-358.
 {¶ 6} Both GM and National Union moved for summary judgment, arguing that GM was a self-insurer in the practical sense as defined inGrange Mut. Cas. Co. v. Refiners Transport Terminal Corp. (1986),21 Ohio St.3d 47, and therefore exempt from providing UM/UIM coverage under R.C. 3937.18. They alleged that National Union's only obligation under the policies arose under the express UM/UIM provision of the automobile insurance policy. They concluded that National Union had no liability even under the UM/UIM provision once the $12,500 UM/UIM policy limit is setoff by $50,000, the amount of the tortfeasor's liability limits. The trial court granted the motions, finding that GM is self-insured as it retains the risk of loss under the policies, and that National Union had no obligation under the automobile policy due to the setoff. Appellants appeal, raising three assignments of error.
 {¶ 7} In order to facilitate our analysis, we will first address appellants' second assignment of error, which alleges that the trial court erred by denying appellants' motion to strike the affidavit of Ronald Judd, who served as manager and director of risk financing for GM.
 {¶ 8} In the affidavit, Judd asserts that he is familiar with fronting policies and opines that GM's risk management program, which utilizes fronting policies, is the practical equivalent of self-insurance. Appellants allege that this affidavit is inadmissible under Civ.R. 56(E) because Judd did not have personal knowledge of the facts he asserted in the affidavit, was not qualified as an expert witness, and because the affidavit contains legal conclusions.
 {¶ 9} As with other matters involving the admission of evidence, appellate review of a trial court's decision on a motion to strike an affidavit is reviewed for an abuse of discretion. Weil v. Este Oils,Inc. (1994), 93 Ohio App.3d 759, 762; Cleveland Clinic Foundation v.Commerce Group Benefits, Inc., Cuyahoga App. No. 79907, 2002-Ohio-1414. More than an error in law or judgment, an abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 10} Civ.R. 56(E) provides that "[s]upporting and opposing affidavits shall be based on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "Personal knowledge" is defined as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay." Brannon v. Rinzler (1991), 77 Ohio App.3d 749,756.
 {¶ 11} Judd's affidavit expressly states that it is based on his personal knowledge. Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E). See Papadelis v. First AmericanSavings Bank (1996), 112 Ohio App.3d 576, 579; Merchants National Bankv. Leslie (Jan. 21, 1994), Clark App. No. 3072. Appellants fail to point to contrary evidence, and we consequently find no abuse of discretion in the trial court's consideration of the affidavit. Further, a reasonable inference can be drawn from the facts asserted in the affidavit, together with Judd's identity, that he possessed personal knowledge of the facts asserted. Accord Merchants National Bank v. Leslie (Jan. 21, 1994), Clark App. No. 3072.
 {¶ 12} Appellants' remaining argument as to the admissibility of Judd's affidavit ultimately relates to its credibility, an inappropriate consideration in ruling on a motion for summary judgment. Turner v.Turner (1993), 67 Ohio St.3d 337, 341; Smith v. Cincinnati Gas Elec. Co. (1991), 75 Ohio App.3d 567, 571. Accordingly, we overrule appellants' second assignment of error.
 {¶ 13} Appellants' first and third assignments of error allege that the trial court erred in granting summary judgment in favor of GM and National Union. Appellants specifically contend that the trial court erred in concluding that GM's risk management program is the practical equivalent of self-insurance.
 {¶ 14} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. An appellate court reviews a trial court's disposition of a summary judgment de novo, that is, independently and without deference to the trial court's judgment. Burgess v. Tackas (1998), 125 Ohio App.3d 294,296. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. MidwestFord, Inc. v. C.T. Taylor Co. (1997), 118 Ohio App.3d 798, 800.
 {¶ 15} Appellants argue that the trial court erred by finding that GM was a self-insurer in the practical sense as defined in the Ohio Supreme Court's decision in Grange. Appellees, in turn, argue that GM must be considered self-insured in the practical sense because the National Union policies are merely fronting agreements.
 {¶ 16} In determining whether an entity is self-insured, courts look primarily at who bears the risk of loss. Dalton v. Wilson, Franklin App. No. 01AP-014, 2002-Ohio-4015, at ¶ 35. It is oft quoted that "[s]elf-insurance is not insurance; it is the antithesis of insurance."Physicians Ins. Co. of Ohio v. Grandview Hosp. Med. Ctr. (1988),44 Ohio App.3d 157, 158. "[W]hile insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting."Jennings v. Dayton (1996), 114 Ohio App.3d 144, 148. Rather, "[s]elf-insurance `is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.'" Physicians at 158.
 {¶ 17} R.C. 4509.45 sets forth the specific requirements for being a self-insurer in the motor vehicle context, and provides in relevant part that proof of financial responsibility may be given by filing a surety bond as provided in R.C. 4509.59 or a certificate of self-insurance as provided in R.C. 4509.72. See R.C. 4509.45(C), (E). There is no evidence in the record that GM holds a certificate of self-insurance pursuant to R.C. 4509.45(E) or that it is a surety bond principal pursuant to R.C. 4509.45(C).
 {¶ 18} However, even where an employer does not comply with R.C.4509.45, its efforts at self-insurance may obviate the requirements of R.C 3937.18. See Grange, 21 Ohio St.3d at 48-49. In Grange, at the time one of its truck drivers was fatally injured by an uninsured motorist, the employer met state financial responsibility requirements for its truck fleet through a financial responsibility bond coupled with excess insurance coverage, neither of which contained UM/UIM coverage. Grange, the decedent's insurance company, filed a declaratory judgment against the employer alleging that as a self-insurer, the employer was obligated under R.C. 3937.18 to provide UM coverage for the protection of its drivers.
 {¶ 19} The Ohio Supreme Court found that, although the employer's efforts to meet its financial responsibility requirements by purchasing a financial responsibility surety bond and two excess insurance policies did not make it a self-insurer "in the legal sense contemplated by R.C.4509.45(D) and 4509.72," such efforts made it a self-insurer "in the practical sense in that [the employer] was ultimately responsible under the terms of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id. at 49. The supreme court broadly held that "[t]he uninsured motorist provisions of R.C.3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at syllabus.
 {¶ 20} Ohio courts have subsequently held that employers subject to a fronting policy with matching liability limits and deductible similarly qualify as self-insurers "in the practical sense," and are thus exempt from the requirements of R.C. 3937.18. Ohio courts have reasoned that, where the deductible of the fronting policies is exactly equal to the liability limits of the policies, the risk of loss never leaves the employers. See, for example, Rupple v. Moore, Ashland App. No. 02-COA-003, 2002-Ohio-4873; McCollum v. Continental Ins. Co. (Apr. 9, 1993), Lucas App. No. L-92-141; Adams v. Fink, Ross App. No. 02CA2660, 2003-Ohio-1457. In each of these cases, the fronting policies required the employers to reimburse the insurance companies for payments made by the insurance companies under the policies. However, where the ultimate risk of loss remains with the insurance company if the employer either refuses or is financially unable to reimburse the insurance company for the loss, employers have been found not to be self-insured. See, for example, Dalton v. Wilson, Franklin App. No. 01AP-014, 2002-Ohio-4015;Grubb v. Michigan Mut. Ins. Co., Montgomery App. No. 19575, 2003-Ohio-1558; Stout v. Travelers Property Cas. Ins. Co., Franklin App. No. 02AP-628, 2003-Ohio-1643; Gilchrist v. Gonsor, Cuyahoga App. No. 80944, 2003-Ohio-2297.
 {¶ 21} In Tucker v. Wilson, Clermont App. No. CA2002-01-002, 2002-Ohio-5142, this court held that where even a "minuscule" risk of loss remains with the insurer, the employer is not self-insured in the practical sense and UM/UIM coverage may arise as a matter of law absent compliance with R.C. 3937.18. In Tucker, the policy issued to the employer by the insurance company contained a bankruptcy clause which provided that the bankruptcy or insolvency of the employer would not relieve the insurance company of its obligations under the policy. This court found that because of the bankruptcy clause, the employer no longer retained 100 percent of the risk; rather, some risk had shifted to the insurance company. Id. at ¶ 14. Because some risk remained with the insurance company, this court held that the employer was not a self-insurer in the practical sense and therefore not exempt from R.C.3937.18. Accord, Gilchrist v. Gonsor, Cuyahoga App. No. 80944, 2003-Ohio-2297; Franklin v. American Manufacturers Mut. Ins. Co., Cuyahoga App. No. 81197, 2003-Ohio-1340. But see, contra, Adams v. Fink, Ross App. No. 02CA2660, 2003-Ohio-1457; Musser v. Musser, Adams App. No. 02CA750, 2003-Ohio-1440.
 {¶ 22} In the case at bar, appellants contend that the GM policies contain a bankruptcy clause, identical to that in Tucker, which defeats appellees' contention that the fronting policies are the practical equivalent of self-insurance.
 {¶ 23} While the policies do contain a similar bankruptcy clause, National Union is further protected by a trust, established by GM, for National Union's exclusive benefit. The trust provides collateral for GM's obligations under the fronting agreements, and thus protects National Union from the risk of loss under the policies. Consequently, even in bankruptcy, GM retains the risk of loss.
 {¶ 24} The fronting policies require GM to reimburse National Union for any loss incurred under the policies. National Union's right to reimbursement is protected by the trust established by GM. Because no risk of loss remains with National Union, but rather rests entirely on GM, we find that, under these policies, GM is a self-insurer in the practical sense and is therefore exempt from the requirements of R.C.3937.18. Accord Dalton v. Travelers Ins. Co., Stark App. Nos. 2001CA00380, 2001CA00393, 2001CA00407, 2001CA00409, 2002-Ohio-7369.
 {¶ 25} Because R.C. 3937.18 does not apply to the policies, UM/ UIM protection does not arise as a matter of law. Rather, the only UM/UIM coverage that exists under the policies is that expressly provided in the automobile fronting policy. If an insured is injured by an underinsured vehicle, this policy provides coverage of $12,500 per person and $25,000 per accident. The policy defines an "underinsured vehicle" as "a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of the `accident' provides at least the amounts required by law where a covered `auto' is principally garaged, but their limits are less than the Limit of Insurance of this coverage." Because Wyatt's State Farm Mutual policy provides coverage of $50,000 per person, coverage in excess of the $12,500 limit provided under the National Union policy, Wyatt's vehicle was not underinsured as defined by the National Union policy and appellants are not entitled to UM/UIM coverage. We also note that the anti-stacking language of the policy further precludes coverage under the policy. See Clark v. Scarpelli,91 Ohio St.3d 271, 2001-Ohio-39.
 {¶ 26} Appellees are entitled to judgment as a matter of law and we accordingly overrule the second and third assignments of error.
Judgment affirmed.
VALEN, P.J., and YOUNG, J., concur.
[1] 2. A "fronting policy" is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states. McCollum v. ContinentalIns. Co. (Apr. 9, 1993), Lucas App. No. L-92-141, 1993 WL 382455 at *3. A fronting agreement typically involves the purchase of a liability policy with a deductible in the same amount as the coverage.