OPINION
{¶ 1} Defendant-appellant, Universal Underwriters Insurance Company ("Universal"), appeals a decision of the Madison County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, C. Phillip Wilson, individually and as administrator of the estate of Holly Wilson, with respect to Phillip's claim for underinsured motorist ("UIM") coverage.
 {¶ 2} On November 20, 1997, Holly Wilson was killed when Jason Haimerl collided with her car. Haimerl was solely at fault and his insurance company tendered the limits of his automobile liability policy, $100,000. Phillip is Holly's surviving spouse. At the time of the accident, Phillip was employed by, and co-owner with his father, R. David Wilson, of London Parts Company, Inc. R. David Wilson and London Parts Company were named insureds under a multiple coverage insurance policy issued by Universal which provided automobile liability coverage ($300,000) as well as excess umbrella coverage ($1,000,000). The policy, originally issued in October 1994, covered the period from October 1, 1997 to October 1, 1998. Under its automobile liability provisions, the policy also provided UIM coverage in the amount of $300,000 per accident. A rejection form signed in 1994 by Phillip purportedly rejected uninsured/underinsured motorist ("UM/UIM") coverage under the excess umbrella coverage and limited UM/UIM coverage under the automobile liability coverage[1] to $300,000.
 {¶ 3} In September 1999, Phillip, acting individually and as the administrator of Holly's estate, filed a complaint against several defendants, including Universal. The complaint sought UIM benefits under London Parts Company's automobile and umbrella policies with Universal. Although it did not state so, the complaint was presumably based upon the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins.Co., 85 Ohio St.3d 660, 1999-Ohio-292. Universal moved for summary judgment. Universal argued that (1) Holly was not an insured under the automobile policy for purposes of UIM coverage, (2) even if she were, the policy contained a valid "other vehicle exclusion" which precluded UIM coverage, and (3) UIM coverage under the umbrella policy was validly rejected.
 {¶ 4} In June 2002, the trial court granted summary judgment against Universal and in favor of Phillip. The trial court found that (1) Holly was an insured under the automobile policy for purposes of UIM coverage pursuant to Scott-Pontzer and its progeny, (2) the "other vehicle exclusion" did not apply, and (3) Phillip's rejection of UM/UIM coverage under the umbrella policy was not valid as it did not comply with the Ohio Supreme Court's decision in Linko v. Indemn. Ins. Co. ofN. Am., 90 Ohio St.3d 445, 2000-Ohio-92. This appeal follows.
 {¶ 5} In its sole assignment of error, Universal argues that the trial court erred by granting summary judgment against Universal and in favor of Phillip. Universal first asserts that Holly is not entitled to UIM benefits under the automobile policy because she does not qualify as an insured under the policy. Universal also asserts that Holly is not entitled to UIM benefits under the umbrella policy because UIM coverage under the umbrella policy was validly rejected. Finally, Universal asserts that if Holly is entitled to UIM benefits under either policy, Universal is entitled to a setoff.
 {¶ 6} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. An appellate court's standard of review on appeal from a summary judgment is de novo. Burgessv. Tackas (1998), 125 Ohio App.3d 294, 296. An appellate court reviews a trial court's disposition of a summary judgment independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co.
(1997), 118 Ohio App.3d 798, 800.
 UIM benefits under the automobile policy. {¶ 7} Universal first argues that Holly is not entitled to UIM benefits under the automobile policy because she does not qualify as an insured. The trial court found that pursuant to Scott-Pontzer and its progeny, Holly was an insured under the automobile policy and as such entitled to UIM benefits. Universal challenges the trial court's reliance on Scott-Pontzer on the ground that the ambiguity recognized inScott-Pontzer is not an issue in this case.
 {¶ 8} In Scott-Pontzer, 85 Ohio St.3d 660, the Ohio Supreme Court held that a plaintiff's decedent, who had been killed in an automobile accident caused by an underinsured motorist, was entitled to UIM coverage under his employer's commercial automobile liability policy. Id. at 665. The decedent's employer, a corporation, was the named insured under the policy, which defined an "insured" for purposes of UIM coverage as including "[y]ou," and "[i]f you are an individual, any family member." Id. at 663. The supreme court determined that the policy language defining who was an "insured" was ambiguous because the word "you," while referring to the corporation, also could be interpreted to include the corporation's employees, "since a corporation can act only by and through real live persons." Id. at 664. Citing the principle that ambiguous language is to be construed liberally in favor of the insured and against the insurer, the court concluded that plaintiff's decedent was an insured under the policy for purposes of UIM coverage. Id. at 665.
 {¶ 9} Subsequently, in a one-line per curiam opinion in Ezawa v.Yasuda Fire Marine Ins. Co. of Am., 86 Ohio St.3d 557,1999-Ohio-124, the Ohio Supreme Court extended UM benefits to the minor son of a corporation's employee. In that case, the policy definition of an insured contained the same "you" and "family member" language as the policy in Scott-Pontzer did. Although the majority of the Ohio Supreme Court did not explain its reasoning other than to cite to Scott-Pontzer, "it is reasonable to assume that the court determined that because employees are insureds under the policy, the employees' family members are also insureds because of the `family member' language contained in the policy definition of insureds." Ogg v. Natl. Union Fire Ins. Co. ofPittsburgh, 151 Ohio App.3d 316, 2002-Ohio-6970, at ¶ 26.
 {¶ 10} Universal's multiple coverage insurance policy provides in its declarations pages that it "insures only those coverages and property shown in the declarations made a part of this policy. Such insurance applies only to those insureds * * * designated for each coverage as identified in Item 2 by letter(s) or number." Item 2 then lists London Parts Company, the corporation, and R. David Wilson, Phillip's father, as named insureds. Yet, under the automobile policy, only the corporation is listed as the named insured. The UM/UIM endorsement applicable to the automobile policy defines an "insured" as "(1) any person shown in the declarations as covered by this endorsement and any family member; (2) anyone else occupying a covered auto; (3) anyone for damages they are entitled to recover because of bodily injury sustained by another insured." "Family member," in turn, is defined as "any ward, foster child or any other person related (by blood, marriage or adoption) to any person shown in the declarations as covered by this endorsement."
 {¶ 11} Upon reviewing the automobile policy, we find that the ambiguity identified in Scott-Pontzer exists in the case at bar. We agree with Universal that the policy language interpreted in Scott-Pontzer is different from Universal's automobile policy language, in that the latter does not include "you" in its definition of an insured. Instead, the automobile policy in part defines an insured as "any person shown in the declarations as covered by this endorsement and any family member." However, the only named insured (and the only covered "person") under the automobile policy is London Parts Company, a corporation. "The continued inclusion of the corporation as a named insured allows the same interpretation rendered in Scott-Pontzer, to wit: the policy extends coverage to all of the corporation's employees, `since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle.'" Reichardt v. Natl. Surety Corp., Clermont App. Nos. CA2002-02-017 and CA2002-02-018, 2002-Ohio-5143, at ¶ 17.
 {¶ 12} It follows that pursuant to the rationale ofScott-Pontzer, Phillip, as an employee of London Parts Company, is an insured under the automobile policy. Because the policy by its own terms also includes family members in its definition of an insured, we find that Holly, at the time of her death, was also an insured under the automobile policy for purposes of UIM coverage. See Ezawa,86 Ohio St.3d 557, 1999-Ohio-124; Ogg, 151 Ohio App.3d 316,2002-Ohio-6970 (declining to extend the rationale of Scott-Pontzer andEzawa to provide UIM coverage to family members of a corporate employee where the policy language did not include "family members" within the definition of "insured").
 {¶ 13} Universal nevertheless argues that Holly does not qualify as an insured under the automobile policy because she was not occupying a covered auto as set forth in the definition of an insured. Universal's argument implies that unlike the policy in Scott-Pontzer, its automobile policy does provide UIM coverage for anyone occupying a covered auto. Our response to Universal's argument is two-fold. First, the policy inScott-Pontzer did define an insured as "anyone else occupying a covered auto * * *." Yet, the Ohio Supreme Court still found the extension of UIM coverage to a corporation to be ambiguous.
 {¶ 14} Second, although not artfully drafted, it is clear that Universal's automobile policy's definition of an insured is written in the disjunctive, that is, that one need not meet all three paragraphs to qualify as an insured. Having previously found that Holly was an insured under the first paragraph of the definition of an insured, we need not address whether Holly must also qualify as "anyone else while occupying a covered auto" before she is entitled to UIM benefits under the automobile policy.
 {¶ 15} Universal next argues that even if Holly qualifies as an insured under the automobile policy, the policy contains a valid "other vehicle exclusion" by virtue of amended R.C. 3937.18(J)[2] which became effective on September 3, 1997, prior to the policy period of October 1, 1997 to October 1, 1998. The exclusion precludes UIM coverage for bodily injury sustained by any person covered under the policy or by any family member while occupying a motor vehicle that is not a covered auto under the policy. It is undisputed that at the time of her death, the vehicle driven by Holly was not a covered auto under the policy.
 {¶ 16} Relying upon the Ohio Supreme Court's decision in Wolfe v.Wolfe, 88 Ohio St.3d 246, 2002-Ohio-322, the trial court held that the 1997 H.B. 261 amendment to R.C. 3937.18 did not apply to the case at bar, and that as a result, the "other vehicle exclusion" was inapplicable. On appeal, Universal challenges the trial court's application of Wolfe to a commercial policy such as Universal's automobile policy.
 {¶ 17} The issue before us is which version of R.C. 3937.18, that is the pre-H.B. 261 version or the H.B. 261 version, applies to the automobile policy and its "other vehicle exclusion." In Martin v.Midwestern Group Ins. Co., 70 Ohio St.3d 478, 1994-Ohio-407, the Ohio Supreme Court held that "an automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates [then effective] R.C. 3937.18 and is therefore invalid." Id. at 482. The General Assembly subsequently trumped Martin with the 1997 H.B. 261 amendment to R.C. 3937.18.
 {¶ 18} In Ross v. Farmers Ins. Group of Cos., 82 Ohio St.3d 281,1998-Ohio-381, the Ohio Supreme Court held that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at 289. Citing Ross, Universal argues that because H.B. 261 amended R.C. 3937.18(J) effective September 3, 1997, prior to the policy period of October 1, 1997 to October 1, 1998, H.B. 261 and amended R.C. 3937.18(J) apply to the case at bar, not pre-H.B. 261 and Martin. Relying upon Wolfe, the trial court disagreed and held that H.B. 261 and amended R.C. 3937.18(J) did not apply to the case at bar.
 {¶ 19} In Wolfe, the Ohio Supreme Court held that "pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." Id. at 250. The supreme court further held that "the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Id.
 {¶ 20} In the case at bar, the automobile policy was originally issued in October 1994. Pursuant to Wolfe, the first two-year guarantee period extended from October 1, 1994 to October 1, 1996. A second two-year guarantee period then extended from October 1, 1996 to October 1, 1998. It was during that 1996-1998 period that H.B. 261 became effective and Holly was killed. However, because H.B. 261 was not in effect when the 1996-1998 period began, H.B. 261 was inapplicable as it "could not have been incorporated into the contract of insurance until the mandatory policy period had expired on [October 1, 1998] and a new guarantee period had begun." Id. at 251. It follows, then, that the pre-H.B. 261 version of R.C. 3937.18 applies to this case and that the "other vehicle exclusion" is unenforceable under Martin.
 {¶ 21} Universal, however, argues that Wolfe only applies to personal automobile policies and not to commercial policies such as its automobile policy. In support of its argument, Universal points to the express language of R.C. Chapter 3937 which differentiates between commercial insurance policies (in R.C. 3937.25 through 3937.27) and personal automobile insurance policies. We disagree.
 {¶ 22} R.C. 3937.25 through 3937.39 govern cancellation restrictions. R.C. 3937.30 through 3937.39 refer to "automobile insurance policy" while R.C. 3937.25 through 3937.27 refer to "policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds and automobile insurance as defined in [R.C.] 3937.30." R.C. 3937.03(C)(1) does provide a definition of "commercial insurance" as follows: "[f]or purposes of this division: (a) `Commercial insurance' means any commercial casualty or commercial liability insurance except sickness and accident, fidelity and surety, and automobile insurance as defined in [R.C.] 3937.30." However, by its own terms, this definition of "commercial insurance" only applies to R.C. 3937.03(C)(1). See Speelman v. Motorists Mut. Ins. Co. (Dec. 22, 1995), Montgomery App. No. 15362.
 {¶ 23} In Carper v. Valley Forge Ins. Co. (Mar. 20, 2002), S.D. Ohio No. C-1-01-281, the court held that "there is no merit to [the insurance company's] contention that the statutory scheme enumerated in [R.C.] 3937.30 through 3037.37 does not apply to corporate entities by its terms. * * * [T]his analysis is strengthened when other provisions of the Ohio Revised Code which deal specifically with commercial entities are evaluated. [R.C.] 3937.25 provides for cancellation of commercial property insurance, commercial fire insurance, or commercial casualty insurance `other than fidelity or surety bonds and automobile insuranceas defined in [R.C.] 3937.30.' This same exception is applied consistently in sections 3937.25 — 3937.27 which apply to commercial entities. * * * If [R.C.] 3937.30 does not include automobile liability insurance policies issued to commercial entities, then there would be no reason to specifically address automobile insurance policies and exempt them from sections 3937.25 through 3937.27." Id. at 15. (Emphasis sic.)
 {¶ 24} In Burke v. Buehler, Tuscarawas App. No. 2002AP070061,2003-Ohio-619, the Fifth Appellate District, addressing an insurance company's claim that Wolfe did not apply to business automobile policies, held that "[i]n Wolfe, however, the Ohio Supreme Court clearly stated that R.C. 3937.31 applied to every automobile liability insurance policy issued in the state of Ohio. We [find] no support in the statutory or case law for the insurance company's proposition that Wolfe and R.C.3937.31 appl[y] solely to personal auto policies." Id. at ¶ 13. Neither do we. We therefore find that the trial court did not err by finding that Holly was entitled to UIM benefits under the automobile policy.
 UIM benefits under the umbrella policy. {¶ 25} Universal argues that Holly is not entitled to UIM benefits under the umbrella policy because (1) UIM coverage under the policy was validly rejected pursuant to H.B. 261, and (2) Holly does not qualify as an insured. The trial court found that Linko, not H.B. 261, applied to the case at bar, and that the rejection form signed by Phillip was "legally insufficient [under Linko] and therefore inoperative."
 {¶ 26} Ohio law prohibits insurers from issuing a policy of automobile liability insurance without first offering UM/UIM coverage in an amount equal to that of the separate liability coverage. R.C.3937.18(A). Failure to offer UM/UIM coverage resulted in the automatic extension of that coverage by operation of the law in the same amount as the liability coverage. See Gyori v. Johnston Coca-Cola Bottling Group,Inc., 76 Ohio St.3d 565, 1996-Ohio-358. Insureds could, however, reject UM/UIM coverage, or select it in a lesser amount, provided that such rejection or selection was made expressly and knowingly. See former R.C.3937.18(C); Gyori. In Linko, 90 Ohio St.3d 445, 2000-Ohio-92, the Ohio Supreme Court held that to be valid, an offer of UM/UIM coverage must contain the following elements: "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Id. at 449.
 {¶ 27} In 1997, H.B. 261 amended R.C. 3937.18(C) to create a statutory presumption of an offer if the insured signs a written rejection of UM/UIM coverage or selects coverage in lesser amounts. However, H.B. 261 did not abrogate the Linko requirements. In Kemper v.Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101, the Ohio Supreme Court unequivocally held that the Linko requirements are applicable to an offer of UM/UIM coverage written after the enactment of H.B. 261. Id. at ¶ 2-4. If Linko applies to offers of UM/UIM coverage written after H.B. 261, it necessarily applies to offers written before H.B. 261.
 {¶ 28} Reviewing Universal's offer of UM/UIM coverage, we find that it fails to set forth premiums for the UM/UIM coverage in violation of Linko. See Glover v. Smith, Hamilton App. Nos. C-020192 and C-020205,2003-Ohio-1020. As a result, neither Universal's offer of UM/UIM coverage nor Phillip's purported rejection of UM/UIM coverage under the umbrella policy were valid.
 {¶ 29} This does not end our inquiry however. Universal argues that even if the rejection of UM/UIM coverage under the umbrella policy was not valid, thus resulting in the automatic extension of that coverage by operation of the law, Holly did not qualify as an insured under the umbrella policy. We note that the trial court did not address this issue. Upon finding that the rejection of UM/UIM coverage was invalid, the trial court simply held that "Universal [had] exposure not to exceed $1,000,000 under its umbrella policy" with regard to Phillip's claim for UIM coverage.
 {¶ 30} Under the umbrella policy, only London Parts Company is listed as the named insured. The policy also refers to R. David Wilson, Joan Wilson, and Phillip as "designated persons;" it is not clear what a "designated person" is for purposes of the umbrella policy as that word is defined nowhere in the policy. Upon reviewing the umbrella policy and its endorsements, we note that we have found three different definitions of an "insured," all seemingly applicable to the umbrella policy. Because it is not clear which one applies, we will address each one of them.
 {¶ 31} First, the policy itself defines in relevant part an "insured" as: "With respect to any auto * * *: (a) you. With respect to (1) any auto * * * used in your business or (2) personal use of any auto * * * owned or hired by you: (a) any person or organization designated in the declarations." "You" and "your" are defined for all three definitions as "the person or organization shown in the declarations as the Named Insured."
 {¶ 32} It is clear that the second part of this definition does not apply to the case at bar as the car driven by Holly at the time of her death was neither used in the corporation's business nor owned or hired by the corporation. As a result, Holly does not qualify as an insured under the second part of the definition. Applying the rationale of Scott-Pontzer to the first part of the definition, and finding that the ambiguity identified in Scott-Pontzer exists here, we find that under this definition of an insured, the umbrella policy, while solely referring to London Parts Company, nevertheless extends coverage to all of the corporation's employees, including Phillip. While Phillip is an insured under the umbrella policy, Holly is not. Unlike the policy language contained in Scott-Pontzer and Ezawa, this first definition of an insured under the umbrella policy does not contain language referencing "family members." As a result, we decline to extend UM/UIM coverage under the umbrella policy to Holly, a family member of a corporate employee, where the policy language does not include family members within that definition of an insured. Ogg, 2002-Ohio-6970, at ¶ 27; see, also, Blankenship v. Travelers Ins. Co., Pike App. No. 02CA693, 2003-Ohio-2592.
 {¶ 33} Next, a first endorsement seemingly applicable to the umbrella policy defines an "insured" as "With respect to any auto * * * (1) used in your business or (2) personal use of any auto * * * owned or hired by you: (a) any person or organization designated in the declarations, and (b) any of your partners, paid employees, directors, executive officers, or stockholders, and their spouse if a resident of the same household. The actual use of the auto must be with your permission and within the scope of such permission." Again, the car driven by Holly at the time of her death was neither used in the corporation's business nor owned or hired by the corporation. In addition, there is no evidence that Holly's use of her car was with the corporation's permission and within the scope of such permission. It follows that Holly does not qualify as an insured under this first endorsement.
 {¶ 34} Finally, the other endorsement seemingly applicable to the umbrella policy defines an "insured" as "(a) you; (b) if you are a partnership or joint venture, any partner or member thereof, but only with respect to their liability as such." There is no evidence that London Parts Company is a partnership or a joint venture. Applying the rationale of Scott-Pontzer to this definition, and finding that the ambiguity identified in Scott-Pontzer exists here, we find that under this definition, the umbrella policy, while solely referring to London Parts Company, nevertheless extends coverage to all of the corporation's employees, including Phillip. While Phillip is an insured under the umbrella policy, Holly is not. Unlike the policy language contained inScott-Pontzer and Ezawa, this definition of an insured under the umbrella policy does not contain language referencing "family members." As a result, we decline to extend UM/UIM coverage under the umbrella policy to Holly, a family member of a corporate employee, where the policy language does not include family members within that definition of an insured.Ogg, 2002-Ohio-6970, at ¶ 27; see, also, Blankenship v. TravelersIns. Co., Pike App. No. 02CA693, 2003-Ohio-2592.
 {¶ 35} In light of all of the foregoing, we find that the trial court erred by finding that Holly was entitled to UIM benefits under the umbrella policy.
 Right of setoff. {¶ 36} Universal argues that in the event Holly is entitled to UIM benefits under Universal's multiple coverage insurance policy, Universal is entitled to a setoff of $100,000, the policy limit of the tortfeasor, Jason Haimerl. Phillip does not challenge Universal's claim to a setoff.
 {¶ 37} R.C. 3937.18(A)(2) provides in relevant part that "[t]he policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." The UIM endorsement applicable to the automobile policy provides that Universal "will pay under this endorsement only after the limits of any other applicable insurance policies or bonds have been exhausted by payment of judgments or settlements."
 {¶ 38} Upon finding that Holly was entitled to UIM benefits under the automobile policy, the trial court held that "plaintiff is entitled to recover damages not to exceed $300,000 against Universal's uninsured/underinsured automobile coverage less `* * * the limits of any other applicable insurance policies or bonds that have been exhausted by payment of judgments or settlements.'" We uphold the trial court's holding and find that Universal is entitled to a setoff of $100,000.
 {¶ 39} In light of all of the foregoing, we find that Holly is entitled to UIM benefits under the automobile policy but not under the umbrella policy, and that Universal is entitled to a setoff. Universal's assignment of error is overruled in part and sustained in part. We therefore affirm in part and reverse in part the trial court's decision granting summary judgment in favor of Phillip, and remand the case for further proceedings in accordance with this opinion.
 {¶ 40} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings according to law and consistent with this opinion.
VALEN, P.J., and YOUNG, J., concur.
[1] For purposes of clarity and easiness of reading, we will refer to the automobile liability coverage and the excess umbrella coverage under Universal's multiple coverage insurance policy as the automobile policy and the umbrella policy.
[2] R.C. 3937.18, as amended by H.B. 261, effective September 3, 1997, provides in relevant part that automobile liability insurance policies may preclude UM/UIM coverage for bodily injury or death suffered by an insured "[w]hile the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, * * * if the motor vehicle is not specifically identified in the policy under which a claim is made * * *." R.C. 3937.18(J)(1).